# United States Court of Appeals

## For the First Circuit

No. 08-1887

JOSÉ ALFONSO SERRANO MUÑOZ,

Plaintiff, Appellee,

v.

SOCIEDAD ESPAÑOLA DE AUXILIO MUTUO Y BENEFICIENCIA DE PUERTO
RICO; HOSPITAL ESPAÑOL DE AUXILIO MUTUO DE PUERTO RICO, INC.;
ÁNGEL COCERO-SANCHÉZ; URBANO RICO-MOLINERO; RAMÓN DELGADO-RUIBAL;
MOISÉS SUÁREZ; VALENTÍN VALDERRÁBANO; MIGUEL ECHENIQUE;
ALFREDO HERES; EMILIO TORRES ANTUÑANO,

Defendants, Appellants,

IVÁN COLÓN; ENRIQUE FIERRES; JOSÉ ISADO,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Lipez, Baldock[*] and Howard,
Circuit Judges.

Gregory T. Usera, with whom Pedro E. Giner-Dapena and Usera
Morell Bauzá Dapena & Cartagena were on brief, for appellants.
Enrique J. Mendoza Méndez, with whom Cesar T. Andreu Megwinoff
and Alvaro R. Calderon, Jr. were on brief, for appellees.

January 26, 2012

---

[*]Of the Tenth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  This is a retaliation case under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 623(d) (2006), and Puerto Rico's general tort statute known as Article 1802, P.R. Laws Ann. tit. 31, § 5141 (2008).  In 1998, Dr. José Alfonso Serrano Muñoz sued his employer Auxilio Mutuo Hospital in a Puerto Rico court, alleging that the hospital had discriminated against him because of his age.  In 2004, one day after Serrano was deposed in connection with that lawsuit, the hospital terminated his employment.  Serrano then brought the present action in federal court, alleging that he was terminated in retaliation for his pending lawsuit and related 2004 deposition testimony.  A jury agreed with Serrano and he was awarded nearly $2 million.  On appeal, the defendants challenge the denial of their renewed motion for judgment as a matter of law (JMOL) and several other rulings.  Although our reasoning differs in certain respects from that of the court below, we affirm.

## I. BACKGROUND[1]

The hospital is a leading medical facility in San Juan, Puerto Rico.  It is owned and operated by defendants Sociedad Española de Auxilio Mutuo y Beneficiencia de Puerto Rico, Inc. (SEAM) and Hospital Español de Auxilio Mutuo de Puerto Rico, Inc.

---

[1]We state the facts in the light most favorable to the jury verdict.  Whitfield v. Meléndez-Rivera, 431 F.3d 1, 3 (1st Cir. 2005).

(HEAM).[2]  In 1978, the hospital hired Serrano as a cardiologist. He rose to become director of the hospital's Noninvasive Cardiovascular Laboratory (NICL) and its Invasive Cardiovascular Laboratory (ICL), both of which he had helped establish.  Beginning in 1979, Serrano also engaged in private practice in leased office space on the hospital's grounds.

In 1997, the hospital relieved Serrano of his directorship of ICL, although his position in NICL remained intact. According to the hospital, it was expanding and modernizing and wanted Serrano to focus on his responsibilities as director of NICL.  Serrano concluded that this decision was the result of age discrimination.  In 1998, he sued the hospital in local court, but he continued to serve as director of NICL and maintain his private practice.

Previously, Serrano had requested permission from the hospital to acquire an electrocardiography machine for use in his private practice.  Miguel Echenique, SEAM's executive director, sent Serrano a letter denying that request.  According to the letter, the hospital's policy, set forth in its lease contracts with doctors, was not to allow individual doctors to keep "expensive equipment which [the hospital] already had and where

---

[2]SEAM both owned and operated the hospital until 1992, when HEAM took over hospital operations, including human resources. SEAM, however, continued to retain title to the hospital's real estate.  The two entities are run independently by separate boards.

services were being rendered." The letter added, however, that the hospital would allow "doctors to have their own equipment for the practice of each speciality in the medical office building which is currently under construction." In 2001, Serrano moved his practice to the new medical office building, known as Torre Médica. In August 2003, he acquired an electrocardiography machine for use at Torre Médica and began conducting a majority of echocardiograms there rather than referring patients to NICL. By performing the tests at his office, Serrano could bill patients' insurance companies for test production fees that the hospital otherwise would have collected.

Soon after Serrano acquired the machine, the hospital noticed a decline in the number of outpatient diagnostic tests conducted by NICL. An annual productivity report using statistics prepared by hospital staff revealed that the lab conducted five percent fewer such tests from October 2002 to September 2003 than it had from October 2001 to September 2002, and that, during the 2002-2003 fiscal year, it conducted progressively lower numbers of echocardiograms. HEAM's administrator, Iván Colón, ordered a breakdown of the number of echocardiograms performed by each of the hospital's cardiologists. Colón concluded that Serrano's hospital lab numbers had dropped by the largest percentage, and that the decline correlated with Serrano's purchase of the electrocardiography machine for his private practice.

On December 29, 2003, Colón presented his findings at HEAM's monthly board meeting. According to the minutes, board members expressed their dissatisfaction that Serrano was competing directly with the hospital by producing his own echocardiograms. The board was further dissatisfied that Serrano had indicated -- during a previous deposition in yet another litigation pertaining to an unrelated property dispute with the hospital -- that he was not concerned about whether he was diverting production fees from the hospital. During the meeting, Ángel Cocero Sanchéz, the chairman of HEAM's board of directors, added that "Dr. Serrano show[ed] a constant dissatisfaction with the services rendered by the Hospital, and is opposed and openly criticizes -- verbally and in writing -- all the Hospital's initiatives." The board then voted unanimously to terminate Serrano's employment "in order not to continue and [sic] putting the Hospital at risk and damaging its best interests." It designated Colón to deliver the news to Serrano "at the moment he consider[ed] to be best."

On January 19, 2004, still unaware of the board's decision to terminate him, Serrano gave a deposition in connection with the 1998 lawsuit. Among other things, he detailed the hospital's alleged acts underlying his discrimination claim. According to Serrano, the deposition was far from cordial and ended in a "heated fashion" over scheduling. The next day Serrano received a terse letter from Colón notifying him that his

employment was terminated immediately; the letter did not offer any reason for his termination. At trial Colón explained that he waited to inform Serrano of the board's decision because of his own prescheduled vacation soon after the December 29 board meeting. Colón returned in mid January and, unaware of Serrano's deposition, chose January 20 to deliver the news based on Serrano's light schedule that day.

In 2005, Serrano brought the present action against SEAM, HEAM, and the individual members of HEAM's board. During trial the defendants moved orally for JMOL, without success. See Fed. R. Civ. P. 50(a). The jury returned a verdict in favor of Serrano on both his ADEA and Article 1802 claims. It awarded Serrano $1,000,000 in compensatory damages, $267,400 in back pay, and $267,400 in liquidated damages. The defendants then renewed their motion for JMOL and, in the alternative, moved for a new trial. See Fed. R. Civ. P. 50(b), 59(a). The court denied those motions as well. Later the court awarded Serrano $250,979.41 in front pay and $139,906.25 in attorney's fees, bringing his total award to nearly $2 million. This appeal followed.

## II. DISCUSSION

We begin with the ADEA claim, turn next to Article 1802, and conclude by briefly addressing a few remaining issues.

## A. **Retaliation under the ADEA**

The defendants first argue that their renewed motion for JMOL should have been granted with respect to Serrano's retaliation claim under the ADEA. They say that Serrano failed to establish even a prima facie case of retaliation, because there was no evidence of any causal connection between his conduct and his termination. In particular, they observe that the board's decision to terminate Serrano predated his 2004 deposition, and contend that the filing of the 1998 lawsuit itself was far too temporally remote. According to the defendants, that conduct could not have contributed to the board's decision as a matter of law.

We review de novo a district court's denial of a motion for JMOL. Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 37–38 (1st Cir. 2003). Such review encompasses all of the evidence in the record, but not "evidence favorable to the moving party that the jury is not required to believe." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000). That is, we must disregard evidence supporting the moving party unless it is both uncontradicted and unimpeached. Id.; see generally 9B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2529 (3d ed. 2008) (collecting cases and discussing Reeves). In performing this examination, we draw all reasonable inferences in favor of the nonmoving party and "resist the temptation to weigh the evidence or make our own credibility determinations." Zachar

-7-

v. Lee, 363 F.3d 70, 73 (1st Cir. 2004).  We may reverse the denial of such a motion "only if reasonable persons could not have reached the conclusion that the jury embraced."  Sanchez v. P.R. Oil Co., 37 F.3d 712, 716 (1st Cir. 1994).

We begin with the basics.  In addition to prohibiting age discrimination, the ADEA protects individuals who invoke the statute's protections.  See 29 U.S.C. § 623(d).  Where there is no direct evidence of retaliation, we, as do other courts, often follow the familiar McDonnell Douglas framework.[3]  Under that framework, the plaintiff must first make "a prima facie showing that (i) he engaged in ADEA-protected conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action."[4]  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991).  If the plaintiff makes out a prima facie case of retaliation, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision."  Id.  If the defendant presents such a reason, then "the ultimate burden falls on the plaintiff to show that the employer's proffered

_____

[3]See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447 & n.2 (1st Cir. 2009) (discussing the application of the McDonnell Douglas framework in ADEA cases).

[4]The defendants conceded at trial that the first two elements were met.

-8-

reason is a pretext masking retaliation for the employee's opposition to a practice cast into doubt by the ADEA." Id.

Although the defendants cast their argument in terms of Serrano's failure to make out a prima facie case, that is not the correct focus at this juncture. The McDonnell Douglas framework is not a religious rite; it is "merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of [retaliation]." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978). Once that question "has been submitted to a jury, the burden-shifting framework has fulfilled its function, and backtracking serves no useful purpose." Sanchez, 37 F.3d at 720; see also U.S. Postal Serv. Bd. of Govs. v. Aikens, 460 U.S. 711, 715 (1983) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."). Cf. Cumpiano v. Banco Santander P.R., 902 F.2d 148, 155 (1st Cir. 1990) (noting the "essential pointlessness" of such backtracking in comparable circumstances). The focus then becomes whether a jury reasonably could have inferred, by a preponderance of the evidence, that Serrano was terminated because of his protected conduct. See 29 U.S.C. § 623(d); Reeves, 530 U.S. at 149-51.

The defendants are right that Serrano's 2004 deposition cannot support an inference of causality. Absent special

circumstances not present here, an adverse employment decision that predates a protected activity cannot be caused by that activity. E.g., Sabinson v. Trs. of Dartmouth Coll., 542 F.3d 1, 5 (1st Cir. 2008) (no causality when adverse employment decision was made two months before the plaintiff filed a complaint). This is also true -- again, there are exceptions -- when the adverse employment decision was contemplated but "not yet definitively determined" before the protected activity took place. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

Here, the board decided to terminate Serrano about three weeks before his deposition. The board was unaware of that deposition when it decided to terminate him, and so was Colón when he eventually delivered the news to Serrano. All this was uncontroverted at trial and Serrano does not claim otherwise on appeal. To be sure, Colón's dispatch the day after a heated deposition in a lawsuit about the hospital's alleged discrimination turned out to be incredibly poor timing. But it is not evidence of retaliation.

Removing that piece of evidence makes this case a much closer call. The defendants say that filing a complaint more than

five years before an adverse employment decision, as Serrano did here, is too remote to establish causality. That is true as far as it goes, and if that were the only remaining evidence of retaliation Serrano would have a problem. See id. at 273 (recognizing that temporal proximity, standing alone, must be "very close"); Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 84 (1st Cir. 2005) (two-month gap too remote); Mesnick, 950 F.2d at 828 (nine-month gap too remote); Oliver v. Digital Equip. Corp., 846 F.2d 103, 110-11 (1st Cir. 1988) (thirty-four-month gap too remote). Yet the 1998 filing itself was but one of several pieces of evidence that Serrano presented at trial. When all of these pieces are viewed together and in Serrano's favor, they form a mosaic that is enough to support the jury's finding of retaliation.

For example, consider Echenique's letter concerning the use of specialized equipment. Although it denied Serrano's request to have his own electrocardiography machine on hospital grounds, the letter did state in general terms that doctors would be allowed to have their own equipment at Torre Médica. Serrano testified that he later purchased the machine based on his understanding that the letter authorized him to do so once he moved his practice, and the jury was free to interpret the letter in the same way. Yet Echenique himself voted with the rest of the board in favor of Serrano's termination, purportedly on the basis that Serrano was

-11-

competing with the hospital. The jury conceivably could have rejected that non-discriminatory explanation and inferred retaliatory motive. See Reeves, 530 U.S. at 179-49. And that inference appears reasonable in light of other evidence that at least four doctors associated with the hospital had similar equipment in their offices. Although these doctors may not have been situated exactly as Serrano, the fact that he alone was disciplined for common conduct could have suggested to the jury that Serrano was singled out.

The evidence also showed that Serrano had an impeccable reputation earned over more than two decades at the hospital. Serrano said so at trial, and the chairman and sole member of the board to testify, Cocero, agreed with Serrano's characterization. Despite that reputation, however, the board terminated Serrano without giving him an opportunity to defend himself. Serrano suggested that this was a departure from the usual practice, although he made little effort to substantiate that assertion. In all events, the jury was not required to believe that doctors like Serrano were usually terminated so abruptly, and it could have viewed the lapse as further evidence of retaliation. See id. Moreover, it became apparent at trial that some of the statistics introduced by the defendants to justify the board's decision were created within a few months after that decision had been made. The defendants responded that those statistics were based on figures

originally presented to the board, but they did not provide an indisputably convincing explanation for the timing. Although one could search for legitimate reasons, the irregular timing could have suggested to the jury that a cover-up was afoot.

Other circumstantial evidence points in a similar direction. Serrano testified at trial that, before he filed the 1998 lawsuit, Echenique told him that if he were to sue the hospital he "would no longer be allowed to work either in that hospital or in any other hospital in Puerto Rico." Although this was an isolated remark made more than five years before Serrano's termination, Echenique was part of the collective that ultimately carried out the threat. See Mesnick, 950 F.2d at 828 (circumstantial evidence includes "comments by the employer which intimate a retaliatory mindset").[5] Serrano further testified that, after he filed the 1998 lawsuit, there was "a record of hostility" and "every month the relations [between the hospital and him] would get colder and colder." This testimony was vague and Serrano

---

[5]The defendants contend that it was actually Enrique Fierres, the chairman of SEAM's board at the time, who made this statement. If true, the statement would be less indicative of retaliatory animus because Fierres was not a member of HEAM's board and there is no evidence that he was involved in the decision to terminate Serrano. See, e.g., Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir. 2002) ("[S]tatements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus."). But the defendants offer no basis whatsoever to support their contention (e.g., transcription error), and we see no reason to believe that Serrano misspoke.

offered little by way of example (one such example was a suggestion that he received an onslaught of "letters" from the hospital administration that interfered with his practice). Still, the jury was free to consider that testimony, for what it was worth, as part of the total package.

All told, the evidence presented at trial was enough to support the jury's finding of retaliation. Although that finding was not inevitable on this record, we are not permitted to second-guess the jury's assessment.

## B. **Fault/Negligence under Article 1802**

The appellants next contend that the district court should have granted their post-trial motion for JMOL as to Serrano's Article 1802 cause of action. See Article 1802, P.R. Laws Ann. tit. 31, § 5141. Specifically, they advance the following five claims of error: that (1) the cause of action was time barred, having been filed after the expiration of Article 1802's one-year statute of limitations; (2) the application of Article 1802 -- which, according to the appellants, was merely a ruse to obtain otherwise unavailable compensatory damages -- is barred by the exclusive remedies of the ADEA and its Puerto Rico analog, Act 115, P.R. Laws Ann. tit. 29, § 194a; (3) the court failed to apply the heightened standard of "gross negligence," required where, as here, the defendants are directors of a (Puerto Rico) corporation; (4) the evidence was generally insufficient to

-14-

establish a cognizable Article 1802 claim; and (5) erroneous instructions issued to the jury warrant a new trial. We address these arguments seriatim.

### 1. Statute of Limitations

Whether Serrano's Article 1802 claim was time barred need not detain us. Although the appellants did raise this issue at the close of evidence, they failed to assert it in their renewed post-verdict motion. Thus, the argument is unequivocally waived. See United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002) ("A party who identifies an issue, and then explicitly withdraws it, has waived the issue.").

### 2. Exclusive Remedy Bar

In inverse sequence, the appellants failed to raise the exclusivity argument at the close of evidence, instead reserving its initial articulation for their post-verdict motion.[6] We have held in no uncertain terms that such failure to raise an issue prior to a Rule 50(b) motion for judgment as a matter of law, without more, results in a waiver of that issue on appeal. See, e.g., Casillas-Díaz v. Palau, 463 F.3d 77, 81 (1st Cir. 2006) (adopting plaintiffs' contention that defendants "ha[d] waived their [argument] by not raising it until their post-trial motion for judgment as a matter of law"); Larch v. Mansfield Mun. Elec.

---

[6] The appellants raised the issue for the first time not in their actual Rule 50(b) motion, but rather in their response to the plaintiff's reply to the motion.

Dep't, 272 F.3d 63, 71-72 (1st Cir. 2001) (same); see also James W. Moore, 5A Moore's Federal Practice ¶ 50.08 (2d ed. 1994) ("[A]ny argument omitted from the [Rule 50(a)] motion made at the close of evidence is waived as a ground for judgment under Rule 50(b)."). Moreover, finding a waiver is particularly appropriate under the present circumstances, where the appellants not only failed to timely raise the argument, but also expressly stipulated in a joint proposed pretrial order that Article 1802 negligence was a contested issue of law to be addressed at trial, and filed proposed jury instructions on the Article 1802 claim.

Even were we to deem the appellants' belated argument forfeited rather than waived, however, we would find no plain error here. See generally United States v. Turbides-Leonardo, 468 F.3d 34, 38 (1st Cir. 2006) (holding that forfeiture of an argument compels plain error review). We explain briefly.

The crux of the appellants' exclusivity claim is that, pursuant to Puerto Rico case law, Article 1802 -- the Commonwealth's broad general tort statute -- may not be invoked concurrently with special labor laws, which they describe the ADEA and Act 115 as, unless the tortious or negligent conduct alleged under Article 1802 is sufficiently distinct from that covered by the paired employment statute. In support of this argument, the appellants rely principally upon a single unreported district court order, issued after the conclusion of the trial in this case and

mere weeks prior to the district court's denial of their Rule 50(b) motion.  See Rosario v. Valdes, 2008 WL 509204 (D.P.R. Feb. 21, 2008) (unpublished order).

In Rosario, the plaintiff brought an action under, inter alia, Act 80, P.R. Laws Ann. tit. 29, § 185 (wrongful dismissal act), Act 100, P.R. Laws Ann. tit 29, § 146 (employment discrimination act), and Article 1802, alleging sexual harassment by her employer.  The court, itself relying on a few paragraphs from a 1994 Puerto Rico Supreme Court case, Santini Rivera v. Serv. Air., Inc., 137 D.P.R. 1 (P.R. 1994), opined that "to the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using that same conduct under Article 1802.  An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked." Rosario, 2008 WL 509204, at *2.

We have held, on rare occasions, that a court's failure to recognize and apply, sua sponte, well-established case law can be so "clear or obvious" as to constitute plain error.  See, e.g., Chestnut v. City of Lowell, 305 F.3d 18 (1st Cir. 2002) (en banc) (per curiam) (holding that a court's failure to recognize existing Supreme Court precedent and preclude, sua sponte, the availability of punitive damages for a 42 U.S.C. § 1983 claim, was sufficiently clear and obvious to amount to plain error); see also United States

-17-

v. Kasenge, 660 F.3d 537, 541 (1st Cir. 2011) (noting that one of the elements of plain error is that the error be "clear or obvious"). The district court's error here -- if error at all -- was neither clear nor obvious.

While the contested punitive damages issue in Chestnut was known to the court, having been affirmatively raised by the court in the parties' presence but subsequently ignored, there is no suggestion that the trial court in this case should have known about the preemption argument proposed here. Further, in Chestnut, the issue had been decisively dispatched in a decades-old Supreme Court case; by contrast, the present topic of bar by exclusive remedy had been discussed only in an unpublished district court order issued after the trial had already concluded.[7] Thus, although the District of Puerto Rico has since held that a single tort claim cannot serve as the basis for simultaneous damages under Act 115 and Article 1802, see, e.g., Nieves Perez v. Doctors' Center Bayamon, No. 09-2212, 2011 WL 1843057, at *7 (D.P.R. May 16, 2011), that case is not an appellate decision, and the issue was far from clear at the time of Serrano's trial, see, e.g., Pagan-Alejandro v. PR ACDelco Serv. Ctr., Inc., 468 F. Supp. 2d 316 (D.P.R. 2006) (considering an Article 1802 claim concurrently with

---

[7] To the extent that the court might have considered the Rosario order in its analysis of the appellants' Rule 50(b) motion, it declined to consider the merits, correctly deeming the argument waived. See Larch, 272 F.3d at 71-72.

claims, based on the same conduct, under specific Puerto Rico employment statutes).[8]

The requirements for plain error are extremely demanding, and "in this circuit, it is rare indeed . . . to find plain error in a civil [matter]." Chestnut, 305 F.3d at 20. This case is no exception. We conclude that, in light of the relative obscurity of Rosario, the paucity of jurisprudence on the issue at the time of trial, the fact that the issue was never raised by either party, and the appellants' own affirmative trial conduct acknowledging Article 1802 as a viable cause of action throughout the proceedings, the court's allowance of the Article 1802 claim did not constitute plain error. See United States v. Marino, 277 F.3d 11, 32 (1st Cir. 2002) (declining to find plain error where the law was unsettled).

### 3. "Gross Negligence" Standard

We turn next to the appellants' contention that the jury, pursuant to the court's purportedly erroneous instructions, applied a standard of general negligence, rather than the required gross

---

[8]Indeed, at the time of Serrano's trial, there was also language in some cases suggesting that such a bar might exist only where the text of the employment statute being invoked provides explicitly that its remedies are exclusive -- language that is not evident in Act 115. See, e.g., Melendez v. KMart Corp., No. Civ. 04-1067, 2006 WL 696082, at *6 (D.P.R. Mar. 17, 2006) (unreported opinion and order) (ordering plaintiff to "show cause why the causes of action under Article[] 1802 . . . should not be dismissed considering settled case law indicating . . . Act 80's nature as the provider of exclusive remedies, thus, preempting causes of action under Article[] 1802") (emphasis added).

negligence standard, in imposing liability on HEAM's board members in their individual capacity. Our cases hold that because this claim was not raised in either of the appellants' motions for JMOL, it has been effectively waived. See Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 766 n.10 (1st Cir. 2010), cert. denied, 131 S. Ct. 1016 (2011); Parker v. Gerrish, 547 F.3d 1, 12 (1st Cir. 2008).

Even assuming, arguendo, that this claim was merely forfeited, it is still subject to the plain error test, which in this case is but an alternative path to the same result. To meet the requirements of plain error, the appellants must show (1) an error that was (2) clear or obvious and not only (3) affected the appellants' substantial rights but also (4) seriously impaired the fairness, integrity, or public reputation of the proceedings -- something akin to a miscarriage of justice. United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011). Given the facts underpinning this argument, the appellants cannot hope to meet this stringent standard.

At the close of trial, the appellants requested, in pertinent part, the following jury instructions to be issued on the applicable negligence standard:

> Defendants' Proposed Jury Instruction No. 36
> Civil Code of Puerto Rico, Article 1802
>
> The standard of liability for this cause of action is a negligence standard. [. . .] Negligence under the law of Puerto Rico means failure to use reasonable care which essentially translated into not anticipating

-20-

and not foreseeing the rational consequences of an act or of a failure to act which a prudent and reasonable person could have foreseen under the same circumstances.

Defendants' Proposed Jury Instruction No. 37
Fault for Negligence - Defined

Another cause of action filed against the individual defendants . . . is a negligence claim . . . . The standard of liability for this cause of action is a negligence standard. [. . .] Negligence under the law of Puerto Rico means failure to use reasonable care which essentially translates into not anticipating and not foreseeing the rational consequences of an act or of a failure to act which a prudent and reasonable person could have foreseen under the same circumstances.

Thus, refined to its essence, the appellants invite us to find that the court's substantial incorporation of their own proposed instructions, rather than issuing, sua sponte, completely divergent gross negligence instructions, constituted at the very least a miscarriage of justice. We decline the invitation. "Where a defendant does not offer a particular instruction, and does not rely on the theory of defense embodied in that instruction at trial, the district court's failure to offer an instruction on that theory sua sponte is not plain error." United States v. Alberico, 559 F.3d 24, 27 (1st Cir. 2009). It necessarily follows that where, as here, a defendant not only fails to offer a particular instruction, but proposes an alternative instruction which the court substantially adopts -- and the embodiment of which the

-21-

defendant espoused throughout the trial proceedings -- no plain error has occurred.

### 4. Sufficiency of the Evidence

Article 1802 provides that "[a] person who by act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. In order to prevail on this theory, the plaintiff must show "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." Vázquez-Filippetti v. Banco Popular de P.R., 504 F.3d 43, 49 (1st Cir. 2007) (construing Puerto Rico law).

As with Serrano's retaliation claim, a reasonable jury could have found fault or negligence on the part of the board. The board based its decision to terminate Serrano in part on his testimony in a deposition concerning an unrelated property dispute with the hospital; but none of the board members bothered to read the deposition transcript, instead relying on characterizations of Serrano's testimony from the hospital's lawyer who was present at the deposition (and adverse to Serrano). Moreover, the board never gave Serrano an opportunity to defend himself, despite his twenty-plus years of service and impeccable reputation. Instead, the board had its fiat delivered in a terse and impersonal letter more

than three weeks after the fact. Finally, Serrano testified that, as a result of his termination, he experienced anxiety, bouts of depression, and trouble sleeping, all of which was corroborated at trial by Serrano's wife. This comprised a sufficient basis for the jury's Article 1802 finding.

### 5. Erroneous Jury Instructions

The appellants' request for a new trial fares no better. The first proposed ground for a new trial is that all instructions concerning Article 1802 were wrong. That ground, however, is premised entirely on their waived argument that Article 1802 has no place in this case, and in any event it lacks adequate independent development. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). The second ground, somewhat more specific than the first, is that the court improperly instructed the jury on the proximate cause element of Article 1802. We see no material difference, however, between the proximate-cause instruction proposed by the defendants and the one that the court ultimately delivered, and we are satisfied that the court's choice of language adequately explained the concept. Accordingly, there was no abuse of discretion. See McDonough v. City of Quincy, 452 F.3d 8, 21 (1st Cir. 2006).

## C. **Remaining Claims**

We briefly address the remaining arguments, which pertain mostly to damages.

First, the appellants argue that the jury's $1 million compensatory damages award warrants remittitur or, in the alternative, a new trial on damages. "We will not disturb an award of damages because it is extremely generous or because we think the damages are considerably less." Koster v. Trans World Airlines, Inc., 181 F.3d 24, 34 (1st Cir. 1999). Rather, "[w]e will only reverse an award if it is so grossly disproportionate to any injury established by the evidence as to be unconscionable as a matter of law." Id. Here, the award may well have overcompensated Serrano, but in these circumstances we cannot say that it was unconscionable or that the court abused its wide discretion in refusing to disturb the jury's calculus. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 433 (1996) (abuse of discretion standard).

Second, the appellants argue that the court's front-pay award of approximately $250,000 was an abuse of discretion. Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont de Numours & Co., 532 U.S. 843, 846 (2001). Because awards of front pay "necessarily involve predictions of events yet to come," they "are generally afforded more deference" than other discretionary awards in this context, such as back pay.

-24-

<u>Johnson</u> v. <u>Spencer Press of Me., Inc.</u>, 364 F.3d 368, 380 (1st Cir. 2004). Here, reinstatement was not possible, and the relatively modest (for a cardiologist) front-pay award was appropriate based on Serrano's age and the nature of his practice. It was not an abuse of the court's equitable discretion.

Third, the appellants challenge the jury's finding that the retaliation was willful, resulting in an additional award of $267,400. <u>See</u> 29 U.S.C. § 626(b) (entitling prevailing plaintiff to doubled back pay in situations involving "willful violations"). Congress intended this liquidated-damages provision to be punitive, thereby serving to deter willful misconduct. <u>See</u> <u>Trans World Airlines, Inc.</u> v. <u>Thurston</u>, 469 U.S. 111, 125 (1985). For this purpose, a violation is considered willful if "the employer . . . knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." <u>Id.</u> at 126; <u>see also</u> <u>Hazen Paper Co.</u> v. <u>Biggins</u>, 507 U.S. 604, 614-16 (1993). Here, for many of the same reasons as are discussed above,[9] we are satisfied that the jury was free -- although by no means compelled -- to assemble the pieces of evidence into a mosaic of calculated misconduct from which it could infer reckless disregard for the protections of the ADEA. Accordingly, the liquidated-damages award stands.

---

[9]<u>See</u> <u>supra</u> Part II.A (addressing the appellants' challenge to the sufficiency of the evidence on Serrano's retaliation claim).

Last, the appellants contest attorneys' fees, not because $140,000 is unreasonable but rather on the ground any fee award was improper. They recognize that the ADEA authorizes an award of attorneys' fees to prevailing parties, McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 357 (1995); see 29 U.S.C. §§ 216(b), 626(b) (2006), so part of the argument -- which we need not address further -- is merely an extension of their earlier argument that retaliation was unproved. The other part is that the award should be reduced because the court did not make certain findings required under Puerto Rico law. See IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 452 (1st Cir. 2010) (construing Puerto Rico law). But the appellants do not adequately explain why the rule that they urge applies in this case, nor do they explain how such findings would have altered the award in this case. More than that is required to show an entitlement to relief. See Zannino, 895 F.2d at 17.

## III. CONCLUSION

For the aforementioned reasons, the judgment is **affirmed**.