# United States Court of Appeals
## For the First Circuit

No. 17-1653

ELBA I. FALTO DE ROMÁN,

Plaintiff, Appellant,

v.

MUNICIPAL GOVERNMENT OF MAYAGÜEZ; JOSE GUILLERMO RODRIGUEZ, as
Mayor of the City of Mayagüez,

Defendants, Appellees,

ELENA MARTINEZ, as Member of the Board of Directors of the Head-
Start Program, Mayagüez; LUIS OLIVERAS, as Member of the Board
of Directors of the Head-Start Program, Mayagüez; LUIS OJEDA, as
Member of the Board of Directors of the Head-Start Program,
Mayagüez; CARLOS GONZALEZ, as Member of the Board of Directors
of the Head-Start Program, Mayagüez; EFRAIN DE JESUS; LISAIRA
DIAZ-NADAL; LUIS BALAGUER; ELIDA CARABALLO; FRANCISCO FIGUEROA;
LOURDES FELICIANO; NITZIA LAMBERTY; LUIS RAMOS; RICHARD ROE, as
Member of the Council of Policy Rules, Mayagüez; JOHN DOE, as
Member of the Council of Policy Rules, Mayagüez; JANE DOE, as
Member of the Board of Directors of the Head-Start Program,
Mayagüez; JANE DOE, as Member of the Council of Policy Rules,
Mayagüez; RICHARD ROE, as Member of the Board of Directors of
the Head-Start Program, Mayagüez; JOHN DOE, as Member of the
Board of Directors of the Head-Start Program, Mayagüez; JANE
DOE, as Member of the Council of Policy Rules, Mayagüez,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Bruce J. McGiverin, Magistrate Judge]

Before

Kayatta and Howard,
<u>Circuit Judges</u>.[*]

———————————

<u>Israel Roldan-Gonzalez</u> for appellant.
<u>Claudio Aliff-Ortiz</u>, with whom <u>Eliezer Aldarondo-Ortiz</u>, <u>Eliezer A. Aldarondo-López</u>, and <u>Aldarondo & López-Bras</u> were on brief, for appellees.
<u>Carlos Lugo-Fiol</u> for appellee Jose Guillermo Rodriguez in his personal capacity.

———————————

August 22, 2022

———————————

———————————

[*]Judge Torruella heard argument in this appeal, but he did not participate in the decision.

**HOWARD**, **Circuit Judge**.  In this appeal from post-trial rulings in a § 1983 action, the former director of a local "Head Start" program in Mayagüez, Puerto Rico seeks reversal of the district court's denial of her motion for judgment as a matter of law, or alternatively for a new trial.  A jury awarded Elba I. Falto De Román only nominal damages against the Municipal Government of Mayagüez and against its mayor Jose Guillermo Rodriguez, after she was terminated from her position without having been afforded a due process hearing.  Falto De Román now argues that she was entitled to greater damages or to a new trial, on the ground that, had she been afforded a hearing, she would not have been removed from her position.  But Falto De Román has waived her right to challenge the denial of her motion for judgment, and she is unable to clear the high bar for finding error in the denial of her request for a new trial.  Accordingly, we affirm.

## I.

In 1981, Congress enacted and the President signed the Head Start Act.  Pub. L. No. 97-35, 95 Stat. 499 (codified as amended at 42 U.S.C. §§ 9831-9852c).  The Act authorizes the Department of Health and Human Services ("HHS") to allocate federal funding to local organizations, dubbed "Head Start programs," which provide early childhood education and support services to children from low-income families.  42 U.S.C. §§ 9833-9836. Every three years, Head Start programs undergo a review by HHS to assess

- 3 -

their compliance with statutory and regulatory requirements.  Id. § 9836a(c); see 45 C.F.R. pt. 1304.  Programs must timely correct any "deficiencies" identified, or else be at risk of having their program designation terminated.  42 U.S.C. § 9836a(d)-(e).

Historically, a Head Start program's grant would automatically renew every five years.  But Congress amended the Act in 2007 to instruct HHS to promulgate regulations requiring underperforming programs to compete for grant money.  Pub. L. No. 110-134, 121 Stat. 1363; see 42 U.S.C. §§ 9836(c)(6)-(7), (d). HHS promulgated a final rule in November 2011, setting forth a designation renewal system.  45 C.F.R. § 1307.

The Municipal Government of Mayagüez, Puerto Rico, has a Head Start program (the "Program").  In 2001, Falto De Román became the Program Director, which made her responsible for administering the Program and contracting with vendors, including for the leasing of buildings.  Additional Program management, as required by the Act, consisted of a Policy Council designed to contribute to the decision-making of the Program, see 42 U.S.C. § 9837(c)(2), and a Governing Board (the "Board") responsible for overseeing the Program and its use of funds, see id. § 9837(a), (c)(1).

In February 2011, the Board and Policy Council met to discuss several concerns about the Program under Falto De Román's

leadership.[1]  The Chairman of the Policy Council reported that: (1) most centers were deteriorating and abandoned; (2) the Program irregularly provided educational materials and equipment; (3) parents complained that the Program refused to help with the needs of their children; (4) the Program had a "[p]oor and inefficient work plan"; (5) Falto de Román's administration failed to present proposals to the Policy Council for evaluation and approval; and (6) her administration made illegal, unauthorized appointments.  The Chairman also relayed that Falto De Román had completely isolated the Board and Policy Council, taken autonomous control over the Program's projects, and withheld the Policy Council's correspondence.  The Secretary of the Policy Council similarly conveyed that dialogue with Falto De Román was "completely null."

Thereafter, in March 2011, the Board and Policy Council asked Falto De Román for various inventory reports pertaining to purchases of educational and construction materials.  Luis Olivares Lopez, Chairman of the Board at that time, testified that the information requested was intended to aid in examining the issues raised at the February 2011 meeting.  Falto De Román

---

[1] This was described in the February 2011 meeting minutes, which were admitted into evidence at trial.

- 5 -

responded by asking the Board and Policy Council to first explain the "purpose or end" of their request before she would comply.

The Board and Policy Council met again later that month.[2] The Program's Executive Director (a position senior to that of Program Director) expressed that Falto De Román's administration had manipulated information that the Executive Director had requested, including the number of children who did not meet Program expectations. She also reported that Falto De Román made unjustified and "exorbitant expenses and purchases" while most centers lacked materials and equipment, and that Falto De Román's administration had failed to act against a teacher accused of child abuse because the teacher was Falto De Román's relative. At the same meeting, the former Assistant Manager of an affiliated entity, the Family and Community Alliance, alleged that Falto De Román had fired her in retaliation for including certain information about the Program in the monthly reports that she was required to file.

Additionally, following a December 2010 on-site monitoring review, HHS reported a deficiency in the Program in April 2011: a "systematic or substantial material failure in . . . performance that . . . involves a threat to the health, safety, or civil rights of children and staff." At childcare centers, HHS

---

[2] This was described in meeting minutes from March 7, 2011, which were admitted into evidence at trial.

observed hazardous outdoor play areas, classrooms without multiple exits, and children who lacked daily outdoor activities. Most notably, HHS discovered that the Program had operated one childcare center without running water for more than a day, yet neither canceled classes nor provided the children with water for drinking and hygiene. HHS reported eleven other areas of noncompliance with applicable standards, laws, and regulations.

HHS gave the Program 30 days to correct the deficiency and 120 days to correct the areas of noncompliance. After 30 days, but before 120 days, Chairman Lopez asked Falto De Román by letter to certify, within 24 hours, that she had resolved these issues. Falto De Román responded a month later, stating that sick leave and service leave prevented her from meeting the 24-hour deadline. She wrote that she had already addressed the findings and discussed some of her efforts with the Chairman. She also wrote that the Board's request did "not foster a prudent or reasonable work environment" and that it was "an act of harassment, persecution and disrespect" to her and her "professional integrity."

Frustrated by this letter, the Board immediately voted to remove Falto De Román. The Policy Council adopted the Board's decision, and the Board formally recommended that the Mayor dismiss Falto De Román for a litany of reasons, including that Falto De Román ignored or belatedly complied with their requests, refused to send them draft fiscal budgets, and made illegal appointments

and layoffs, among other misconduct.  The Mayor adopted this decision one week later and informed Falto De Román.  HHS later stripped the Program of its automatic funding renewal because of its deficiency, making it the only such program in Puerto Rico to lose its automatic renewal.

Falto De Román dismisses the foregoing narrative as pretext and asserts that the Mayor terminated her as an act of retaliation for an entirely unrelated matter.  According to Falto De Román's testimony at trial, in the summer of 2010 the Mayor improperly halted the Program's attempt to rent space from a company with close ties to his political rivals.  After the company filed suit in July 2011 the Mayor confronted her, and Falto De Román told him that she had disclosed his impropriety and would testify against him if called to do so.  The Mayor then reproved her for being disloyal and vowed that he would have the Board dismiss her.

Falto De Román sued the Mayor, Municipality, Board, and Policy Council for, among other things, violating her Fourteenth Amendment due process rights by terminating her without a hearing. The Mayor and Municipality conceded that Falto de Román did not receive a hearing prior to discharge.  After an appeal to this court and remand,[3] the district court dismissed Falto De Román's

---

[3] See Falto de Roman v. Oliveras, 637 F. App'x 616 (1st Cir. 2016).

claims against the Board and Policy Council and held a trial on the narrow issue of whether Falto de Román was entitled to compensatory or punitive damages or back pay as a result of not receiving a hearing.

The jury found the defendants not liable for any damages. Falto de Román then moved for nominal damages, and the district court entered judgment of $1.00 in her favor. Falto De Román subsequently filed a motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure or alternatively for a new trial under Rule 59. The district court denied the motion, and Falto De Román timely appealed.

## II.

On appeal, Falto De Román claims that the district court erred by denying her motion for judgment or a new trial because a reasonable jury would have awarded her damages. But we must affirm because Falto De Román has waived her Rule 50(b) arguments, and she does not meet the high bar for a new trial.

## A.

Falto De Román may not challenge the district court's denial of her Rule 50(b) motion because she failed to move for judgment before her case was submitted to the jury. Rule "50(a)(2) requires that a party first file a motion for judgment as a matter of law 'any time before the case is submitted to the jury.'" Jones ex rel. United States v. Mass. Gen. Hosp., 780 F.3d 479, 487 (1st

Cir. 2015) (quoting Fed. R. Civ. P. 50(a)(2)). If the district court denies this initial motion, "following the verdict a party may file a motion under Rule 50(b) to renew the claims." Id. But timing is everything, for "[w]e have held in no uncertain terms . . . that a failure to raise an issue prior to a Rule 50(b) motion for judgment as a matter of law, without more, results in a waiver of that issue on appeal." Id. (internal quotation marks omitted) (quoting Muñoz v. Sociedad Española de Auxilio Mutuo y Beneficiencia de P.R., 671 F.3d 49, 58 (1st Cir. 2012)). Here, Falto De Román failed to make an initial Rule 50(a) motion; she thereby did not preserve any issues for renewal in her 50(b) motion. See id. at 488; see also Santos-Arrieta v. Hosp. del Maestro, 14 F.4th 1, 8-9 (1st Cir. 2021).

Nevertheless, Falto De Román contends that her arguments on record should satisfy her duty under Rule 50. "Even were we to agree that a rigid invocation of the phrase 'Rule 50(a)' may not be necessary in all circumstances," Jones, 780 F.3d at 488, the brief portion of the trial record that Falto De Román cites does not amount to developed argument for judgment as a matter of law. And it "did nothing to put the district court or defendants on notice that [Falto De Román] would argue that, as a matter of law, the defendants had failed 'to put forth sufficient admissible evidence' such that no reasonable jury could return a verdict in defendants' favor.'" Id. at 489-90 (quoting Casillas-Díaz v.

- 10 -

<u>Palau</u>, 463 F.3d 77, 81 (1st Cir. 2006). Falto De Román therefore cannot save her Rule 50(b) request from waiver.

**B.**

Falto De Román's motion for a new trial is, however, preserved. <u>See</u> <u>Jennings</u> v. <u>Jones</u>, 587 F.3d 430, 436 (1st Cir. 2009) (explaining that "[a] district court's power to grant a motion for a new trial is much broader than its power to grant a [Rule50(b) motion]"); 9B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2537 (3d ed. Apr. 2022 Update) ("[I]f the verdict winner's evidence was insufficient as a matter of law but no motion for judgment as a matter of law was made under Rule 50(a), even though the district court cannot grant judgment as a matter of law under Rule 50(b) for the party against whom the verdict is rendered, it can set aside the verdict and order a new trial."). We review the denial of such motions for abuse of discretion, disturbing only verdicts that are "against the demonstrable weight of the credible evidence or result[] in a blatant miscarriage of justice." <u>Whitfield</u> v. <u>Melendez-Rivera</u>, 431 F.3d 1, 9 (1st Cir. 2005) (quoting <u>Acevedo-Garcia</u> v. <u>Monroig</u>, 351 F.3d 547, 565 (1st Cir. 2003)), <u>abrogated on other grounds by</u> <u>Pearson</u> v. <u>Callahan</u>, 555 U.S. 223 (2009). "Our review is circumscribed because '[c]ircuit judges, reading the dry pages of the record, do not experience the tenor of the testimony at trial,'" and we therefore "take 'both the facts and the reasonable

- 11 -

inferences therefrom in the light most hospitable to the jury's verdict.'"  Mejías-Aguayo v. Doreste-Rodriguez, 863 F.3d 50, 54 (1st Cir. 2017) "(first quoting Jones, 78F.3d at 492, then quoting Poy v. Boutselis, 352 F.3d 479, 485 (1st Cir. 2003))."  See BB 5.2(f)(ii), (iii) (only permitting the omission of quoting parentheticals beyond the first level); BB 10.6.3 (same).

Careful review of the record shows that the verdict did not overstep this high bar.  First, the jury had been instructed that, in order to receive compensatory damages Falto de Román had to demonstrate damages "caused exclusively by the denial of a pre-termination hearing," meaning "damages that flow naturally from the deprivation of the constitutionally protected right to due process itself."[4]  Falto de Román's counsel conceded at trial that they had not now presented such evidence, and Falto de Román does not argue otherwise.

Second, the jury was also instructed that, in order to receive back pay Falto de Román needed to prove that her "discharge would not have occurred if [her] procedural due process rights had been observed."  Yet the Mayor testified that he would have fired Falto de Román even if she had received a hearing due to her

---

[4] The parties did not object to the jury instructions, which "[o]n their face . . . are not patently wrong."  Milone v. Moceri Family, Inc., 847 F.2d 35, 38-39 (1st Cir. 1988).  They therefore have become "the law of the case."  Id. at 39; see also Muñiz v. Rovira, 373 F.3d 1, 7 (1st Cir. 2004).

- 12 -

"insubordination," "failure to follow instructions" and provide required information, and "the lack of communication" between Falto de Román and the governing bodies. And appellees presented ample evidence that these reasons did in fact drive the Policy Council and Board to seek her termination. Falto de Román points to contrary evidence indicating that she did provide requested documents, and she argues that other factors (such as the Head Start Program's loss of its automatic renewal status and the Mayor's "retaliatory animus" towards her) are not legitimate reasons for her dismissal. But the existence of, at best, competing evidence surrounding her termination does not allow us to conclude that "the verdict is so seriously mistaken, so clearly against the law or the evidence, as to constitute a miscarriage of justice." Finally, the jury was instructed that if it found Rinsky v. Cushman & Wakefield, Inc., 918 F.3d 8, 27 (1st Cir. 2019) (quoting Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989)).

Finally, if the jury found "that the conduct of [the Mayor] was recklessly and callously indifferent to [Falto de Román's] right to procedural due process," it was permitted—but not required—to award punitive damages as "appropriate to punish [the Mayor] or deter [him] and others from like conduct in the future." Falto de Román argues on appeal that "a reasonable jury could . . . not have concluded that a punitive damages award was

- 13 -

not warranted in this case," given that she was deprived of a hearing and that "her dismissal was nothing more than a pretext for retaliation." But, as discussed above, appellants presented considerable evidence that the Policy Council and Board expressed serious and repeated concerns about Falto De Román's leadership, resulting in an independent recommendation of dismissal that the Mayor adopted. In this context, we cannot say that it was "against the demonstrable weight of the credible evidence" for the jury to decline to exercise its discretion to award punitive damages. Whitfield, 431 F.3d at 9 (1st Cir. 2005) (quoting Monroig, 351 F.3d at 565).

In sum, from the foregoing we cannot say that the district court exceeded the bounds of its discretion in refusing to disturb the jury verdict.[5]

## III.

Accordingly, the district court's denial of Falto De Román's motion for judgment as a matter of law or alternatively for a new trial is **affirmed**.

---

[5] At oral argument before us, Falto De Román argued for the first time that a reasonable jury could not have believed that the Mayor was credible because he admitted that he had not intended to fire Falto De Román. But this is of no consequence, for even if Falto De Román offered such evidence at trial, the Mayor's credibility was for the jury to decide.