# United States Court of Appeals
## For the First Circuit

No. 17-1507

VÍCTOR RAMOS-SANTIAGO, ET AL.,

Plaintiffs, Appellants,

v.

WHM CARIB, LLC, ET AL.,

Defendants, Appellees,

JEFF WILLENBERG, ET AL.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Torruella, Lipez, and Barron,
Circuit Judges.

Miguel A. Suro Carrasco, with whom Jorge Miguel Suro Ballester and Suro & Suro were on brief, for appellants.
Shiara L. Diloné Fernández, with whom Carl Schuster, Andrés C. Gorbea Del Valle, and Schuster Aguiló LLC were on brief, for appellees.

March 22, 2019

**LIPEZ**, **Circuit Judge**. Appellants Víctor Ramos-Santiago ("Ramos-Santiago"), his daughter Maryam Ramos-Meléndez and four minor grandchildren (hereinafter referred to collectively as "Ramos-Santiago"), filed this suit under Puerto Rico law, premised on diversity jurisdiction, against Ramos-Santiago's former employer and its insurance carrier.[1]  In the complaint, Ramos-Santiago alleges unjust dismissal and age discrimination in employment, and his family asserts derivative tort claims arising from the alleged age discrimination.[2]

The district court granted summary judgment for Defendants[3] on Ramos-Santiago's discrimination claim and the family's derivative tort claims, denied summary judgment on the unjust dismissal claim, and denied Ramos-Santiago's cross-motion for summary judgment.  Ramos-Santiago then filed a motion for

---

[1] Defendants-Appellees are the operator of Rio Mar resort, WHM Carib, LLC ("Wyndham Rio Mar"); WHM's insurance carrier, Continental Insurance Company of New Jersey; and individuals Danny Williams and Kelli Joseph (collectively, "Wyndham").

[2] The tort claims are "wholly derivative [of Ramos-Santiago's discrimination claim] and, thus, [their] viability is contingent upon the viability of the underlying employment discrimination claim." Costa-Urena v. Segarra, 590 F.3d 18, 30 (1st Cir. 2009) (quotation omitted); accord Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 258, n.7 (1st Cir. 2000) (citing Santini–Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1 (1994)).  The parties do not dispute the derivative nature of these claims.

[3] Not all the defendants named in the complaint are parties to the appeal (i.e. Jeff Willenberg and the Conjugal Partnership Willenberg-Doe, named in the complaint, are not parties to the appeal).

reconsideration, which the district court denied.  The parties subsequently settled the unjust dismissal claim.

On appeal, Ramos-Santiago challenges the partial entry of summary judgment in favor of Defendants, the denial of his motion for summary judgment, and the denial of his motion for reconsideration.  After careful consideration, we affirm.

## I.

We must address a preliminary jurisdictional issue. Ramos-Santiago filed his notice of appeal after the district court's entry of partial summary judgment but prior to its entry of final judgment.  Ramos-Santiago's notice of appeal was therefore premature, and Wyndham has questioned our jurisdiction to entertain this appeal.

## A.   The History of the Proceedings

On March 14, 2017, the district court issued an opinion and order granting partial summary judgment to Wyndham. Ramos-Santiago filed a motion for reconsideration, which the district court denied on March 23, 2017.  On April 7, 2017, the court, noting the likelihood of settlement of the unjust dismissal claim, entered an order, labeled "judgment," closing the case for "administrative purposes," and stating that the case would be reopened for a final judgment after the parties settled the remaining claim.

On April 28, 2017, Ramos-Santiago advised the court that the parties had settled the unjust dismissal claim. He also informed the court of his intent to appeal the court's disposition of his other claims:

> Due to the Judgment [entered April 7] and in an abundance of caution, the plaintiffs will file a Notice of Appeal today, subject to Federal Rule of Appellate Procedure 4(a)(2).

That same day, Ramos-Santiago filed a notice of appeal. A week after the notice was filed, on May 3, 2017, the district court entered a final judgment dismissing all claims with prejudice. Subsequently, on May 11, 2017, the court issued a new, lengthy memorandum and order, again denying Ramos-Santiago's motion for reconsideration and modifying and superseding the court's previous order. See Ramos-Santiago v. WHM Carib, LLC, No. CV 14-1087 (SEC), 2017 WL 2062857, at *7 (D.P.R. May 11, 2017) (stating additional reasons for the failure of Ramos-Santiago's "pretext" argument). Ramos-Santiago did not appeal from either the final judgment or the superseding order.

## B. Rule 4(a)(2) and Ramos-Santiago's Appeal

As a general rule, appeals may only be taken from "final decisions of the district courts." 28 U.S.C. § 1291. In this case, Ramos-Santiago's notice of appeal, which was filed after the district court granted partial summary judgment to the Defendants and closed the case for "administrative purposes" but before it

entered a final judgment, see Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 392 (1st Cir. 1999) (endorsing view that an administrative closing is not a "final adjudication"), was premature. See 28 U.S.C. § 1291. However, Federal Rule of Appellate Procedure 4(a)(2) ("Rule 4(a)(2)") creates an exception to the general rule for premature notices that "relate forward" to the district court's entry of final judgment. Clausen v. Sea-3, Inc., 21 F.3d 1181, 1185 (1st Cir. 1994); see Fed. R. App. P. 4(a)(2). Rule 4(a)(2) provides that a notice of appeal filed "after the court announces a decision or order -- but before the entry of the judgment or order -- is treated as filed on the date of and after the entry." Fed. R. App. P. 4(a)(2). A decision or order for purposes of the Rule is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 867 (1994) (quoting Catlin v. United States, 324 U.S. 229 233 (1945)).

We have recognized Rule 4(a)(2)'s applicability to "a premature notice of appeal of a decision disposing of some but not all claims," such as a grant of partial summary judgment, if "the decision would have been appealable if immediately followed by certification pursuant to [Federal] Rule [of Civil Procedure] 54(b)." Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 34 (1st Cir. 2006) (citations ommited); accord Clausen,

21 F.3d at 1186.[4]  This inquiry is a "hypothetical one" -- would the district court's decision "have been appealable immediately by virtue of Rule 54(b)[?]"  Barrett, 462 F.3d at 35 (internal quotations omitted).  For purposes of this inquiry, it is inconsequential whether Rule 54(b) certification was actually sought.  See id.

Applying these principles to this case, we find that Rule 4(a)(2) applies.  The district court's March 14, 2017 opinion and order granting partial summary judgment in favor of Wyndham ended the litigation of Ramos-Santiago's discrimination claim and derivative tort claims on the merits on that date, leaving nothing for the court to do as to those claims but execute judgment.  If Ramos-Santiago had sought certification of final judgment on those claims pursuant to Rule 54(b), his motion could have been granted.  See Fed. R. Civ. P. 54(b).  His notice of appeal, filed on April 28, 2017, therefore "related forward" to the district court's entry of final judgment on May 3, 2017, such that we treat the notice of appeal as if it was filed after that entry of judgment.  We accordingly have jurisdiction and proceed to the merits of the appeal.

---

[4] Federal Rule of Civil Procedure 54(b) provides that "[w]hen an action presents more than one claim for relief [such as the discrimination and unjust dismissal claims in this case] . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).

## II.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Conjugal P'ship Acevedo-Príncipe v. United States, 768 F.3d 51, 54 (1st Cir. 2014).  In an appeal from a district court's grant of summary judgment, our review is de novo, and we view the facts in the light most favorable to the non-moving party -- in this case Ramos-Santiago.  Del Valle-Santana v. Servicios Legales de P.R., Inc., 804 F.3d 127, 129 (1st Cir. 2015).  Although the basic facts, set forth below, are undisputed, Ramos-Santiago argues that the district court failed to view those facts in the light most favorable to him.

In 1987, Ramos-Santiago began working at the Rio Mar resort ("Rio Mar") in Río Grande, Puerto Rico.  In 2004, he became the resort's golf tournament coordinator.  In 2007, Rio Mar was acquired by defendant-appellee WHM Carib, LLC ("Wyndham Rio Mar"), and Ramos-Santiago became its employee.  At this time, Ramos-Santiago also had a second job, known to Wyndham Rio Mar, as a tournament coordinator for the Professional Golfers' Association ("PGA").  In that capacity, Ramos-Santiago coordinated golf tournaments throughout Puerto Rico, earning a coordination fee for each tournament.  The fee was typically paid by the host of the

tournament, such as the country club at which the tournament was being held.

In 2012, pursuant to his affiliation with the PGA, Ramos-Santiago coordinated a golf tournament for the College of Engineers and Land Surveyors of Puerto Rico ("CELS"). The tournament was held at another resort, Palmas del Mar. Ramos-Santiago was paid three hundred dollars for his services as PGA coordinator by a check issued by the Palmas del Mar Athletic Club.

A year later, in 2013, CELS held its annual convention at Rio Mar. The convention included a wide array of activities, including a golf tournament. Ramos-Santiago again coordinated the tournament, this time in his capacity as golf tournament coordinator for Wyndham Rio Mar. CELS provided a $3,000 prize purse to be distributed to professional golfers participating in the tournament. Ramos-Santiago, citing delays in distribution of the prize money after the tournament at Palmas del Mar, asked CELS to make the $3,000 prize check payable to him so that he could efficiently distribute the money to the athletes.

On the day before the tournament, a representative of CELS brought the $3,000 check in Ramos-Santiago's name to the Rio Mar and gave the check to another employee of the hotel. That employee notified Wyndham Rio Mar's comptroller, Hector Aponte, of the check received in Ramos-Santiago's name. Aponte made a photocopy of the check before returning it to the other employee,

who then gave the check to Ramos-Santiago. Ramos-Santiago then cashed the check, paid $2,700 to the tournament winners, and retained three hundred dollars as a personal coordination fee. Ramos-Santiago did not inform anyone at CELS or Wyndham Rio Mar that he would be keeping $300 of the prize money for himself.

The next day, Aponte; Jeff Willenberg, Ramos-Santiago's supervisor and the resort's director; and Johanna Vargas, the human resources manager for the resort, met to discuss the check. Called to the meeting, Ramos-Santiago explained that he had arranged for the $3,000 check to be made in his name to avoid delays in distribution of the prize money and that he had paid himself $300 because that was the amount that he had been paid by CELS in 2012. Following this meeting, Willenberg contacted CELS and learned that Ramos-Santiago had arranged with CELS that he would distribute the prize money following the tournament but had never discussed deducting a personal fee. As a result of this conversation, Ramos-Santiago was suspended pending the conclusion of an investigation into the incident.

At the conclusion of the investigation, Willenberg, who believed Ramos-Santiago had acted with innocent intentions, recommended that Ramos-Santiago be issued a written warning and that his suspension remain in place. Vargas disagreed and recommended that Ramos-Santiago be terminated, as did Kelli Joseph, Wyndham's Regional Human Resources Director, who viewed

Ramos-Santiago's actions as "gross misconduct."  Ultimately, Danny Williams, Rio Mar's General Director, made the decision to terminate Ramos-Santiago.  On August 15, 2013, Ramos-Santiago was terminated from his position.  He was sixty years old and had no prior disciplinary record.

## III.

Ramos-Santiago's discrimination claim is based on the Puerto Rico Anti-Discrimination Act ("Law 100"),[5] which provides, inter alia, a cause of action for persons who suffer employment discrimination due to their age. P.R. Laws Ann. tit. 29, § 146; Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 27 (1st Cir. 1998).  Law 100, while similar to federal employment law in various respects, has a distinctive burden shifting scheme. See Baralt v. Nationwide Mut. Ins. Co., 251 F.3d 10, 16 (1st Cir. 2001); see also Alvarez-Fonseca, 152 F.3d at 27 n.8 (comparing the

---

[5] Among other changes, the Puerto Rico Labor Transformation and Flexibility Act, Law No. 4 of February 26, 2017 ("Labor Reform Act"), eliminated Law 100's presumption that all unjust dismissals are discriminatory.  See Labor Reform Act, 2017 P.R. Laws 66 (amending Article 3 of Law 100).  The district court applied pre-enactment law to the parties' summary judgment motions, reasoning that whether the amendment had retroactive effect was unclear but that, because the pre-enactment law benefited Ramos-Santiago, "dismissal under [the new] standard, of course, would also be warranted."  Ramos-Santiago v. WHM Carib, LLC, Civ. No. 14-1087(SEC), 2017 WL 1025784, at *4 (D.P.R. Mar. 14, 2017).  On appeal, neither party has objected to the district court's application of pre-enactment law.  For the purposes of this decision, we assume without deciding that pre-enactment law applies to Law 100 actions pending before the enactment of the Labor Reform Act.

different schemes).  Under Law 100, once a plaintiff makes out a prima facie case of discrimination, "the employee enjoys a presumption that he or she has been the victim of discrimination; and . . . the burden of production and persuasion then shifts to the employer to rebut this presumption."  Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 423 (1st Cir. 2017); accord Baralt, 251 F.3d at 16.  An employer may rebut the presumption of discrimination by presenting evidence demonstrating that "the existence of discrimination [as a factor in the dismissal] was less probable than its nonexistence."  Baralt, 251 F.3d at 18 (citation omitted).  If an employer meets this burden, the burden of persuasion returns to the plaintiff who must show that a reasonable jury could conclude, by a preponderance of the evidence, that "the defendant . . . violated Law 100 because the dismissal was motivated by discriminatory animus instead of or in addition to [any] legitimate reasons for dismissal."  Alvarez-Fonseca, 152 F.3d at 28.[6]

---

[6] This burden-shifting framework differs from the McDonnell Douglas framework that applies to claims under the Age Discrimination in Employment Act ("ADEA"), the federal law equivalent of Law 100 for the issue of age discrimination.  Under the McDonnell Douglas framework, once the plaintiff establishes a prima facie case, the defendant then must produce a nondiscriminatory reason for its actions.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  This burden is one of production, not of persuasion.  Id.  Thus, unlike under the Law 100 framework, the burden of persuasion never shifts to the defendant-employer under McDonnell Douglas.  Id. at 142-43.  In

Here, the district court assumed, for the purposes of summary judgment, that Ramos-Santiago met his initial burden of stating a prima facie case of age discrimination. See Ramos-Santiago v. WHM Carib, LLC, Civ. No. 14-1087(SEC), 2017 WL 1025784, at *7 (D.P.R. Mar. 14, 2017). The court then asked whether Wyndham had overcome the presumption of age discrimination by establishing that a reasonable jury could find, by a preponderance of the evidence, that Ramos-Santiago's discharge was not motivated, in whole or in part, by discriminatory animus. Id. The court found that Wyndham had easily carried this burden "by pointing to the undisputed facts that triggered Ramos-Santiago's termination." Id. Finally, the court concluded that Ramos-Santiago had failed to satisfy his ultimate burden of showing that a reasonable jury could conclude, by a preponderance of the evidence, that age-related discriminatory animus played a role in Ramos-Santiago's dismissal, and granted summary judgment in favor of Wyndham. Id.

On appeal, Ramos-Santiago contends he has presented sufficient evidence to establish that he is entitled to judgment in his favor as a matter of law or, in the alternative, that he has raised sufficient disputed issues of material fact that the

_____

either case, however, if the defendant fulfills its burden, the plaintiff has the ultimate burden of persuasion. Id. at 143.

- 12 -

existence of discriminatory age animus is a question that should be put to a jury. Responding to these claims, we summarily reject Ramos-Santiago's claim that he was entitled to summary judgment on his age discrimination claim and turn to the remaining issue -- whether the district court properly entered summary judgment for Wyndham on their motion.

Here, we assume, as the district court did, that Ramos-Santiago has made out a prima facie case of age discrimination. We also agree with the district court that Wyndham overcame the presumption of age discrimination by demonstrating that no reasonable jury could conclude that the existence of age discrimination, as a factor in Wyndham's decision to terminate Ramos-Santiago, was more probable than its nonexistence. See Baralt, 251 F.3d at 18.

Wyndham stated that the reason for the dismissal of Ramos-Santiago was "that Ramos-Santiago took $300 without authorization." The undisputed facts presented by the parties align with Wyndham's stated rationale. Ramos-Santiago arranged that the CELS prize check be written in his name without approval from Wyndham, cashed the check, and then appropriated three hundred dollars without first discussing a personal fee with Wyndham or CELS. Wyndham began its investigation of Ramos-Santiago only after the resort's comptroller, Aponte, learned of the prize check in Ramos-Santiago's name. Ramos-Santiago was suspended when the

resort's director, Willenberg, learned that Ramos-Santiago had taken three hundred dollars of the CELS tournament prize money for himself without authorization. Three of the four persons involved in the decision to dismiss Ramos-Santiago -- Vargas, the HR manager for the resort, Joseph, Wyndham's regional HR director, and Williams, Wyndham's General Director -- recommended dismissal, each citing disciplinary issues. No reasonable jury could conclude, based on these undisputed facts, that Wyndham has not met its burden of production and persuasion that discipline was the reason for Ramos-Santiago's termination from employment and age discrimination was not a factor in that decision.

With Wyndham having satisfied its burden, Ramos-Santiago had to present enough evidence for a reasonable factfinder to conclude that his "dismissal was motivated by discriminatory animus instead of or in addition to [Wyndham's stated] reasons for dismissal." See Alvarez-Fonseca, 152 F.3d at 28. In an attempt to meet this ultimate burden, Ramos-Santiago argues that the investigation initiated by Aponte and Willenberg became a pretext for age discrimination by the "real discriminators" -- "Williams, Joseph [although Joseph did not know Ramos-Santiago's age], and probably Vargas" -- who each determined that Ramos-Santiago should be dismissed. Ramos-Santiago, however, sets forth no evidence that Williams, Joseph, or Vargas (or any other person) considered his age or harbored any age-related animus against him. Indeed,

Ramos-Santiago concedes that he does not recall Vargas, Joseph, Williams, or anyone else at Rio Mar making discriminatory comments about his age -- or even making any comments about age at all.

Ramos-Santiago also attempts to show discriminatory motive by arguing he was treated more unfavorably than a younger employee, Willenberg, for a similar disciplinary issue.[7] Although differential treatment may yield an inference of discriminatory animus, see Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 451 (1st Cir. 2009), here, Wyndham's more lenient treatment of Willenberg cannot be the basis for an inference of age discrimination because Willenberg was not "similarly situated [to Ramos-Santiago] in material respects." Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996); see Velez, 585 F.3d at 450 (applying "similarly situated" standard in Law 100 case). Willenberg accepted $150 of CELS prize money because he participated in the CELS golf tournament as an athlete, having taken a day off from work to do so. Although it is true that Aponte advised Willenberg not to accept a fee for appearing in the tournament, Aponte also testified that he "was not against [Willenberg] collecting his prize money."

---

[7] In his brief before the district court, Ramos-Santiago claimed another younger employee was also treated differently from him despite having a disciplinary record. On appeal, he does not mention this other younger employee. Thus, we deemed waived any argument based on this alleged fact. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Moreover, Willenberg's above-the-table acceptance of award money, even if not permitted, is still dissimilar to the conduct of Ramos-Santiago, who deducted an unauthorized personal fee from the CELS prize purse after arranging that CELS's check be written to himself. Ramos-Santiago's appropriation of a personal fee is different in kind from Willenberg's acceptance of prize money because it was undisclosed and because it decreased the funds available to the tournament participants.

Ramos-Santiago additionally points to the absorption of his former job duties[8] by younger employees, which he suggests is evidence that Wyndham's stated reason for his dismissal was pretextual because it shows that Wyndham had a continuing need for his job services. Cf. Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 24 (1st Cir. 2015) (continuing need for job services may be demonstrated by evidence that the former employee's job functions were absorbed by other employees). It is undisputed that the job duties previously assigned to Ramos-Santiago were distributed to three younger employees -- the golf operations manager of the resort (early 40s), the resort director Willenberg (45-47), and the Pro Shop manager (30s) -- after Ramos-Santiago's

---

[8] These job duties included working with and meeting with the athletes, preparing food and beverages for meetings with clients, finalizing a list of tournament competitors, organizing athletic equipment, coordinating parking, and setting up for golf tournaments.

termination.  It is unclear from the record whether the employees that replaced Ramos-Santiago continued to carry on their other duties while performing some of Ramos-Santiago's former duties or whether they were reassigned to perform his former role exclusively.  See LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 846 (1st Cir. 1993) ("A discharged employee is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties.") (quotations omitted).  Given their roles at the resort (the resort director among them), the former seems more likely.

Regardless, Ramos-Santiago's suggestion that this redistribution of duties supports an inference of pretext is misplaced.  Wyndham has never argued that Ramos-Santiago's dismissal was the result of a lay-off or that his functions had become unnecessary.  Indeed, Wyndham has asserted consistently that Ramos-Santiago was fired because of misconduct.  It is therefore unsurprising that his functions were redistributed after his dismissal, and evidence of a continuing need for Ramos-Santiago's job services is of limited relevance.  Cf. id. at 842 (explaining the varying considerations in age discrimination context, "depending upon whether or not the plaintiff was dismissed as part of a reduction in force.").

Finally, Ramos-Santiago relies on the circumstances of his dismissal.  He points out that Willenberg, believing Ramos-

- 17 -

Santiago had acted in good faith, recommended against Ramos-Santiago's termination, and only Vargas and Joseph recommended in favor of his dismissal. Even assuming Willenberg's view was accurate -- Ramos-Santiago acted in good faith -- this fact is probative only of the unjustness of Ramos-Santiago's dismissal -- not age discrimination. See Baralt, 251 F.3d at 19. ("Plaintiffs' efforts to counter [Defendant's] evidence of a genuine investigation with proof that they did little or nothing wrong shores up their claim for unjust dismissal, but . . . is not on its own probative of age discrimination.").

He further argues that he did not violate his contract and that his termination was therefore unjustified. In the alternative, he argues that, even if he did violate his contract, his violation was not sufficiently grave to justify a first-offense dismissal under Puerto Rican law. Furthermore, he argues, Wyndham conceded knowledge that Ramos-Santiago worked for the PGA at the same time that he worked for Wyndham. However, these points as well go to whether Ramos-Santiago's dismissal was unjustified. Ramos-Santiago's evidence of unjust dismissal, without further direct or circumstantial evidence of age discrimination, is not sufficiently probative to permit a reasonable jury to find that

age discrimination motivated Wyndham's dismissal of Ramos-Santiago instead of or in addition to the stated disciplinary rationale.[9]

## IV.

For the reasons set forth above, we affirm the district court's entry of partial summary judgment in favor of Appellees, as well as its denial of Appellants' motions for summary judgment and reconsideration.

**Affirmed**.

---

[9] Ramos-Santiago makes no argument on appeal in support of his motion for reconsideration other than to reiterate that the district court erroneously applied summary judgment law. There is some question as to the source of Ramos-Santiago's appeal -- the district court's initial denial of the motion or the superseding order issued after the notice of appeal. Regardless of which order is under our review, our review is for abuse of discretion. Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). Having concluded that summary judgment was properly entered, we find that the district court did not abuse its discretion in denying Ramos-Santiago's motion for reconsideration.