**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 20-1632

JOAN OQUENDO,

Plaintiff, Appellant,

v.

COSTCO WHOLESALE CORPORATION, d/b/a Costco Wholesale #365,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Marshal D. Morgan, U.S. Magistrate Judge]

---

Before

Howard, Chief Judge,
Lipez and Thompson, Circuit Judges.

---

Humberto Cobo-Estrella, with whom Cobo Estrella Law Office was on brief, for appellant.
Vicente J. Antonetti, with whom Gabriel A. Quintero-O'Neil and Goldman Antonetti & Córdova, LLC, were on brief, for appellee.

---

April 29, 2021

---

**THOMPSON, Circuit Judge**.

## Overview

Joan Oquendo works for Costco Wholesale Corporation as an administrative manager. A few years back, when she was a receiving manager (a position on the same level as an administrative manager), Costco higher-ups supposedly discriminated against her by failing to reasonably accommodate her pregnancy-related restrictions. So she sued Costco, asserting various claims. The only ones now relevant are her claims of pregnancy and gender discrimination under Title VII of the Civil Rights Act of 1964 (as amended by the Pregnancy Discrimination Act) and disability discrimination under the Americans with Disabilities Act (we briefly discuss her other claims in a footnote near the end of the opinion). Acting through a magistrate judge, see 28 U.S.C. § 636(c), the district court dismissed her case on summary judgment and later denied her motion for reconsideration. She appeals both rulings. And we affirm. But because we basically write only for the parties — who obviously know the facts, the procedural history, and the issues presented — our discussion will be limited.

## Standards of Review

We give fresh-eyed review to the district court's summary-judgment decision, seeing whether Costco "is entitled to

judgment as a matter of law" because there is no "genuine dispute as to any material fact" — even after reading all reasonable inferences in the record in Oquendo's favor. See Fed. R. Civ. P. 56(a); see also, e.g., Lang v. Wal-Mart Stores East, L.P., 813 F.3d 447, 454 (1st Cir. 2016). And we give abuse-of-discretion review to the court's reconsideration ruling. See, e.g., Ramos-Santiago v. WHM Carib, LLC, 919 F.3d 66, 76 n.9 (1st Cir. 2019); Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 411 (1st Cir. 2015).

### Arguments and Analysis

*Summary Judgment*

Some context is necessary to place Oquendo's relevant discrimination theory into a workable perspective.

Costco's job description says that the essential functions of Oquendo's receiving-manager position include "[a]ssist[ing] in receiving duties and other areas of the department as needed" (accounting for "25%" of her time). The job description also says that the physical demands needed to perform the essential functions include bending, squatting, kneeling, reaching above and below the shoulders, and lifting and carrying up to 50 pounds. Costco says that these physical demands are essential to that position. Oquendo disagrees, at least when it comes to lifting — though she provides no record cites, probably

- 3 -

because she testified by deposition that "all the work is physical" and that she "[o]f course" had to lift boxes weighing ten pounds or more on "[o]ccasion[]." But no one disputes that the job description says nothing about exempting day-shift receiving managers from having to perform the job's essential functions. The significance of all this will become clearer very soon.

Oquendo told her general manager, Patrick Bergeron, that her current work schedule (involving some evening shifts) was too hard on her given her pregnancy-related medical issues (she, for example, was dealing with *hyperemesis gravidarum* — a condition characterized by severe nausea and vomiting, among other symptoms). So she asked him if she could work the day shift for the rest of her pregnancy. And he agreed to do that while her doctor filled out a work-restriction form.

The form Oquendo's doctor completed — which she gave to Costco — okayed her to work 8 a.m. to 5 p.m., with the following physical restrictions: no lifting or carrying over 10 pounds, no reaching above the shoulder, no bending or stooping, no twisting of the torso, no full or partial squatting, no kneeling, and no climbing stairs or ladders. After evaluating the situation, a leave specialist in the human resources department concluded that given her doctor-imposed limitations, she could not presently perform the essential functions of any job in the warehouse. So

she ended up on a "pregnancy disability" leave of absence.[1] And during that leave, Costco temporarily assigned her receiving-manager duties to Carlos Tolentino (who was a "[j]unior [m]anager"). But when the leave ended, Costco restored her to the position she held before — asked at her deposition whether she "came back to work" with "the same salary[,] . . . working conditions[,] and . . . benefits," she replied: "Yes."

Which brings us to Oquendo's discrimination theory. In her view, Costco "unlawfully excluded [her] from work . . . because of her diminished capacity during pregnancy" by placing her on a "leave of absence" that "she did not want" and that her doctor "[n]ever asked for." Noting Bergeron's deposition testimony that he could modify a work schedule "on a temporary basis" and that her pregnancy was "temporary," she contends that she could have done her job's essential functions if only Costco had "reasonabl[y] accommodat[ed]" her by putting her on days as she and her doctor requested.[2]

---

[1] The parties spar over whether Oquendo asked for the leave (she says no; Costco says yes) and whether she got paid during this time (she says no; Costco says yes). But because we decide this case on other grounds (explained shortly), we need not address those two issues.

[2] This talk of reasonable accommodation and essential functions comes in the context of Oquendo's argument concerning the McDonnell Douglas burden-shifting scheme, which provides a path for proving discrimination using circumstantial rather than direct evidence. See generally Ramos-Echevarría v. Pichis, Inc.,

Oquendo's thesis does not hold together, however. Put aside that a leave of absence — even an unpaid one — may be a reasonable accommodation in certain situations. See García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647 (1st Cir. 2000). Put aside too that an employer need not give an employee her preferred accommodation. See Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68 (1986); Feliciano v. Rhode Island, 160 F.3d 780, 787 (1st Cir. 1998). And also put aside that an employer need not create a new position tailored to the employee's abilities. See Enica v. Principi, 544 F.3d 328, 342 (1st Cir. 2008). Instead

---

659 F.3d 182, 186-87 (1st Cir. 2011) (discussing the test); see also Flaherty v. Entergy Nuclear Oper., Inc., 946 F.3d 41, 53-54 (1st Cir. 2019). Oquendo's brief suggests that the district court need not have analyzed her discrimination claims under McDonnell Douglas because (according to her) she presented direct evidence of discrimination. And she says her direct evidence is Bergeron's acknowledgement (and here we quote her brief) that Costco "explicitly took [her] pregnancy into account in reaching an employment decision." She provides no record cites for that assertion, however — a violation of a rule of appellate procedure that requires a party to cite "parts of the record on which [she] relies." See Fed. R. App. P. 28(a)(8)(A). And while we have no obligation to flip through the record for a party who has not done as she should, see Rivera-Corraliza v. Morales, 794 F.3d 208, 226-27 (1st Cir. 2015), we note that when her lawyer asked Bergeron at his deposition whether "the disability . . . related to her pregnancy . . . was taken into account when [c]orporate decided to send her on leave," Bergeron answered: "I don't know what . . . [c]orporate made the decision on" — though he did say in the same deposition that the leave department told him "that the restrictions that her doctor gave her . . . did not allow her to work within the confines of any position at the warehouse at that time." All of which undermines her direct-evidence suggestion.

focus on Costco's written job description, which (to repeat) says that the essential functions of Oquendo's post required her to bend, squat, kneel, reach above and below the shoulders, and lift and carry up to 50 pounds — without carving out an exception for those working on the day shift.[3]  And focus on her doctor's completed work-restriction form, which (to repeat again) barred her from (among other things) bending or stooping, kneeling, reaching above the shoulder, and lifting or carrying over 10 pounds — restrictions squarely at odds with the essential physical duties of the receiving-manager position.  A big problem for Oquendo is

---

[3] An employer's official job description is relevant — but not dispositive — in determining what the essential functions of a position are.  See Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 25-28 (1st Cir. 2002).  Seeking to downplay the significance of this document, Oquendo (as alluded to above) calls the "occasional lifting" duties "marginal" and "nonessential." But simply calling something "nonessential" does not make it so. We require argument with legal authority and record citation. See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).  Oquendo provides neither, developing no credible claim for why the lifting requirement is not essential.  And don't forget her deposition testimony about how "all" receiving-manager "work is physical" and how she "[o]ccasionally" lifted boxes weighing ten pounds or more.  To the extent her lawyer suggested at oral argument that her deposition testimony casts sufficient doubt on how Costco defined the receiving manager's role, the suggestion is "too little" and "too late":  too little, because counsel offered no record cites; and too late, because the general rule is that claims made for the first time at oral argument are waived.  See Limone v. United States, 579 F.3d 79, 100 n.11 (1st Cir. 2009). If more were needed, we echo a point made by Costco — that Oquendo conceded at her deposition that the written job description accurately reflected what her "functions" as a receiving manager "were."

that she never convincingly explains how working days — the only accommodation she requested — would have enabled her to perform the essential functions of her job with her doctor-imposed restrictions in place, a point Costco made in its brief (Oquendo, by the way, chose not to file a reply brief in the normal course of appellate briefing).

None of Oquendo's other arguments for reversing summary judgment moves the needle either. She, for instance, plays up what she says are two "damning" deposition "admissions" by Bergeron: his agreeing that before she turned in the work-restriction form, she was doing her job and never complained about lifting things. But the doctor-ordered restrictions — with the lifting limitation being one of many, remember — created a new reality for all involved, which she does not effectively confront. To borrow a quote from a case of ours, her claim that "her apparent past ability to perform the job without issue supports an inference that she could effectively undertake the essential functions of the [position]" is not a difference-maker — and that is because Costco was "on firm ground" in saying "that whatever its understanding of [her] physical restrictions was, that understanding was altered . . . when it first gleaned the full scope of [her] physical limitations" once her doctor weighed in. See Jones v. Walgreen Co., 679 F.3d 9, 18 (1st Cir. 2012). She

also makes much out of how Tolentino performed her tasks while on a "day schedule." And without naming names, she insists that Costco also "treated other employees" more "favorably by changing work schedules" instead of putting them on leaves of absence. But she makes no convincing showing that Costco acted towards any of them under materially-similar circumstances — actually, she admitted at her deposition that she did not know *any* employees who had physical restrictions similar to hers, which leaves a gaping hole in this aspect of her claim. See generally González-Bermúdez v. Abbott Labs. P.R. Inc., 990 F.3d 37, 44 (1st Cir. 2021) (explaining the materially-similar requirement); Ramos-Santiago, 919 F.3d at 74 (same). Pulling out all the stops, she accuses the district court of not viewing the record in the light most favorable to her and of making forbidden factfinding and credibility appraisals. But after reviewing the court's work, we are unmoved by this argument.

One last subject and we are done.

*Reconsideration*

The district court characterized Oquendo's reconsideration motion as one under Fed. R. Civ. P. 59(e), a characterization that she does not contest on appeal. The court also labeled her motion just a "rehash[]" of arguments that took their lumps at the summary-judgment stage, a label that she does

- 9 -

not dispute here either. Our cases say that if "the district court has not misapprehended some material fact or point of law, a motion for reconsideration is rarely a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." Caribbean Mgmt. Group, Inc. v. Erikon LLC, 966 F.3d 35, 45 (1st Cir. 2020) (quotation marks omitted). And having "already . . . explained" how the district court did not stumble in granting Costco summary judgment, we find no abuse of discretion in the court's "reject[ing] [Oquendo's] attempt to repastinate the same ground."[4] See id.; see also Ramos-Santiago, 919 F.3d at 76 n.9 (reaching a similar result in a similar situation).

---

[4] As promised, we now say a few words about Oquendo's other claims (this is as good a place as any to do that) — claims that fall by the wayside, for one reason or another. She, for example, asserted age discrimination under the Age Discrimination in Employment Act and retaliation for engaging in activity protected under Title VII. But, as relevant to our analysis, the district court dismissed the age-discrimination claim because she failed to exhaust administrative remedies and dismissed the retaliation claim because the alleged misconduct was not unlawful. And she presents no convincing argument that the court got either conclusion wrong. She also asserted claims for violations of Puerto Rico law — claims the court dismissed on the merits rather than relinquishing supplemental jurisdiction. To her way of thinking, once the court granted summary judgment on the federal claims, it "should have" — emphasis hers — "*declined* to exercise supplemental jurisdiction" over the Puerto Rico claims "and dismissed those *without* prejudice." A court that dismisses federal claims before trial normally should dismiss the supplemental claims. See 28 U.S.C. § 1367(c)(3). But "[i]n an appropriate situation," the court can "retain jurisdiction" over the supplemental claims despite "the early demise of all foundational federal claims." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (emphasizing that "the exercise of

- 10 -

**Final Words**

For the reasons recorded above, we uphold the district court's rulings and judgment.

*Affirmed.  The parties shall bear their own costs on appeal.*

---

supplemental jurisdiction in such circumstances is wholly discretionary" and that "the district court, in reaching its discretionary determination on the jurisdictional question, will have to assess the totality of the attendant circumstances"); see also Redondo Const. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (stressing that "[n]o categorical rule governs the analysis; a court must weigh concerns of comity, judicial economy, convenience, and fairness").  And she does not persuasively explain how the court erred here.  So no more need be said about any of these claims.  See, e.g., Reyes-Colón v. United States, 974 F.3d 56, 61 (1st Cir. 2020); Rodríguez, 659 F.3d at 175-76.