**Rosa CARDONA JIMENEZ and Charles E. Casellas Rosario, Plaintiffs, Appellees,**

v.

**BANCOMERCIO DE PUERTO RICO, Defendant, Appellant.**

**No. 98–1693.**

United States Court of Appeals, First Circuit.

Heard March 2, 1999.

Decided April 6, 1999.

William Santiago Sastre with whom Marcos Valls Sanchez was on brief for appellants.

Fernando L. Gallardo for appellee.

Before SELYA, Circuit Judge, COFFIN and CYR, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Plaintiff-appellee Rosa Cardona Jiménez ("Cardona") was fired from her employment with defendant-appellant Bancomercio de Puerto Rico ("Bancomercio"). She subsequently brought suit under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34, ("ADEA"), and under Puerto Rico Law 100, P.R. Laws Ann. tit. 29, §§ 146–51, ("Law 100"). Cardona prevailed at trial, and on appeal Bancomercio claims that the court incorrectly denied its motion for judgment as a matter of law, in addition to committing other errors. We agree that Cardona failed to present sufficient evidence for a jury to find she had been the victim of age discrimination, and therefore reverse.

## I. *Background*

The following facts are undisputed. Cardona was originally hired to work in the banking industry in 1972. Through a series of bank mergers and acquisitions, she eventually became an employee of Bancomercio in 1991. The following year Bancomercio promoted her to manager of the Puerto Nuevo branch, where she was in charge of half a dozen tellers and other employees. During her tenure at Bancomercio and its predecessors, Cardona had consistently received highly positive evaluations of her performance.

From 1993 to 1995, Bancomercio was not performing as profitably as it should have been, due apparently in part to periodic discrepancies between cash inventories in tellers' drawers and the amounts that ought to have been there. As a consequence, the bank began concentrating on those discrepancies to reduce unaccounted for losses. Bancomercio instructed the branch managers to implement three specific procedures to safeguard the money against possible theft. First, the tellers had limits on the cash they were allowed to have in their drawers. If a teller received deposits which increased the amounts in the drawer above that limit, the manager would transfer some cash from that teller's drawer to the vault. Second, the manager was supposed to engage in periodic verifications of the tellers' cash levels. Managers did not personally reconcile the actual cash in the drawers with the teller's transactions on a daily basis. To ensure that the tellers were not dipping into the till, managers were instructed to conduct random surprise counts of the drawers to check for discrepancies. Third, managers were responsible for checking daily whether each drawer contained roughly the correct number of bundles of large denomination bills.

Consistent with these actions to be taken by managers, Bancomercio also instituted a policy to be implemented by the Human Resources department. In light of the fact that Bancomercio permitted its tellers to maintain personal accounts at the bank, the Human Resources department was instructed to monitor the tellers' accounts periodically, looking for unusual or suspicious activity.

Despite these procedures, a teller supervised by Cardona at the Puerto Nuevo branch stole a significant amount of money. An auditor of the branch noticed that the teller, Lorna Ramirez ("Ramirez"), had developed a habit of making small deposits into her bank account two or three times a week. The auditor found this pattern suspicious and informed the assistant vice president of operations. The assistant vice president, in turn, instructed Cardona to perform a surprise cash verification the following day. When the check was performed, it was discovered that Ramirez's drawer was more than $8,000 short of the $13,000 it should have contained. Ramirez

was immediately dismissed, consistent with bank policy.

Bancomercio conducted an internal investigation and found that Cardona had failed to take the three precautions required to prevent precisely this sort of theft. First, Cardona had permitted Ramirez to retain $13,000 in her cash drawer, well in excess of her $10,000 limit. Second, Cardona had established a pattern for the "surprise" cash verifications, thereby allowing Ramirez to determine when such audits would take place and eliminating the benefit of any surprise. Third, the bank concluded that Cardona had not counted the bundles of $20 bills, and consequently Ramirez had placed rolls of coins under the bundles to artificially inflate their appearance. Ramirez, in fact, admitted that she had been able to steal the money because she knew Cardona was not taking these precautions. The auditor also criticized the Human Resources department for failing to give adequate attention to the pattern of deposits in Ramirez's account.

Bancomercio's Human Resources Committee met to discuss the situation. The members testified that they decided to fire Cardona for failure to supervise her tellers adequately. Cardona was summoned to the bank's central offices and informed of the bank's decision. At that meeting, the bank told her that she would receive her week's pay and all accrued vacation pay. Bancomercio also offered to pay her an extra $5000 in return for a release from any claims against it, but she refused. At the time of firing, she was 41. She was temporarily replaced by another employee, Wilfredo Robles, who was also 41. Her permanent replacement was Luisa Guerrero, age 37. Although Cardona was dismissed, the bank merely reprimanded Giselle Lebron ("Lebron"), the head of Human Resources, for failure to monitor Ramirez's account.

Cardona sued Bancomercio, claiming age discrimination. The parties consented to trial before a magistrate judge. *See* 28 U.S.C. § 636(c). At trial, the parties stipulated that, of the 166 employees hired between 1993 and 1995, 49 were born before 1955. Testimony also revealed that 9 of the 33 employees fired between 1993 and 1995 were born before 1955.

At the close of Cardona's case, Bancomercio presented a motion for judgment as a matter of law. It renewed the motion at the close of its case, and after the jury verdict. Each time the court denied it.

## II. *Discussion*

■■■ Bancomercio is entitled to judgment as a matter of law only if there is no legally sufficient evidentiary basis for a reasonable jury to find for the plaintiff. *See* Fed.R.Civ.P. 50(a). We review the court's denial of the bank's motion *de novo*, taking the facts in the light most favorable to Cardona. *See Russo v. Baxter Healthcare Corp.*, 140 F.3d 6, 7–8 (1st Cir.1998). Cardona must provide "more than a mere scintilla of evidence and may not rely on conjecture or speculation to justify the submission of an issue to the jury." *Id.* (internal quotation marks omitted). Although she had other related subsidiary claims, Cardona's verdict was premised on either her ADEA or her Law 100 claim, and our analysis must start there.

■■■ A. *ADEA.* In relevant part, the ADEA prohibits Bancomercio from discharging Cardona because of her age. In a wrongful discharge case such as this one, Cardona bears the ultimate burden of proving that she would not have been fired but for her age. *See Serrano–Cruz v. DFI Puerto Rico, Inc.*, 109 F.3d 23, 25 (1st Cir.1997). When the plaintiff has direct evidence of discriminatory animus, the case may be put to the jury without further ado. *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). When, as here, direct evidence is lacking, the plaintiff's ADEA claim is governed by the familiar *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.,* 152 F.3d 17, 24 (1st Cir.1998).

▆▆ Under *McDonnell Douglas,* Cardona must first present a prima facie case of age discrimination, which requires that she show: 1) she was a member of a protected age group, *i.e.,* at least 40 years old; 2) she was meeting Bancomercio's legitimate job expectations; 3) she was fired; and 4) the employer had a continuing need for the same services, and they subsequently were performed by one with the same or similar qualifications as the plaintiff. *See Brennan v. GTE Government Systems Corp.,* 150 F.3d 21, 26 (1st Cir.1998). Once she has met this modest burden, a presumption of discrimination attaches, and Bancomercio must articulate a legitimate, nondiscriminatory reason for firing her. *See id.* If it does so, the presumption of discrimination vanishes and Cardona must show by a preponderance of the evidence both that the bank's reason was a pretext and that the real reason was age-based animus. *See Alvarez–Fonseca,* 152 F.3d at 24; *Brennan,* 150 F.3d at 26. While Bancomercio briefly has the burden of producing a legitimate reason for her discharge, Cardona shoulders the burden of persuasion throughout. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Serrano–Cruz,* 109 F.3d at 26.

Bancomercio concedes that Cardona has established her prima facie case but argues that it has articulated a legitimate

reason which she failed to rebut. We note that, even considering the evidence in the light most favorable to Cardona, the bank's reason is compelling. The bank instructed branch managers to undertake three specific measures to safeguard its capital, which is the bank's very raison d'etre. Whatever her previous evaluations, the uncontested evidence showed that Cardona failed to implement any of the three in the manner required by the bank.[1] As a result of her dereliction, a teller under her supervision stole more than $8,000.

Cardona highlights two additional pieces of evidence to meet her responsibility of demonstrating that the alleged reason was pretextual and that her firing was actually motivated by age animus.[2] First, she claims that between 1993 and 1995, 9 out of 33 individuals fired by the bank were over the age of 40. Second, she argues that Lebron, the head of Human Resources, was similarly situated, was under 40, and was not punished as harshly as she was. Neither rationale carries the day.

▆▆ The evidence regarding the number of individuals whose employment was terminated does not produce an inference of discrimination. In fact, it suggests the opposite. Nine of the 33 dismissed translates into 27.3% of those fired being over 40.[3] However, counsel also acknowledged that 49 of the 161 employees hired during the same period, or 30.4%, were over 40. The fact that Bancomercio's pool of new employees contained a higher percentage of individuals over 40 than its pool of dis-

1. We note that she claims she performed the cash verifications more often than required by bank policy. However, because the verifications could be predicted and thus were not a surprise, their benefit, regardless of frequency, was eliminated.

2. Although she notes several other pieces of evidence as well, they add virtually nothing to show pretext or discrimination, and we decline to address them individually.

3. We note that at trial the evidence was not, technically speaking, that these individuals were over 40. Rather, the testimony was that

9 out of 33 people fired between 1993 and 1995 were born before 1955. It is possible that some of those fired were not yet 40, *i.e.,* those born in 1954 and let go in 1993 would have been only 39. The transcript indicates that counsel discussed the possibility of a stipulation that all 9 were over 40 as of the date of their discharge. The record on appeal contains no indication that such a stipulation was agreed to. Nevertheless, viewing the evidence in the light most favorable to Cardona, we will assume that each was, in fact, over 40.

charged employees suggests a lack of discrimination. It is axiomatic that in order to survive a motion for judgment as a matter of law, the evidence Cardona presented must make the existence of the facts to be inferred, namely pretext and age discrimination, more probable than their nonexistence. *See Resare v. Raytheon Co.*, 981 F.2d 32, 34 (1st Cir.1992). Contrary to her argument, the numerical comparison offered by Cardona actually makes age discrimination and pretext less probable.

■■■■■ The comparison with Lebron is equally unhelpful. Cardona claims that pretext and animus can be inferred from the fact that Lebron was a similarly situated employee, was not over 40, was also involved, but was not dismissed. The problem with Cardona's argument is that she and Lebron were not "similarly situated." To be "similarly situated" for the purpose of our discrimination jurisprudence, the two individuals or situations must be similar "in all relevant aspects." *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir.1989) (quotation omitted). In order that "apples [are] compared to apples[,]" we have stated that "the 'relevant aspects' are those factual elements which determine whether reasoned analogy supports, or demands, a like result." *Id.*

Here it is obvious that Cardona and Lebron were not situated similarly in all relevant aspects.[4] Cardona was the branch manager who directly supervised Ramirez. Bancomercio had instructed Cardona to take several concrete steps to prevent tellers from stealing, but she failed to do so. Lebron, on the other hand, was the head of Human Resources, and had no direct supervisory responsibilities over Ramirez. Any action on Lebron's part would not have prevented the theft in the first instance; it only would have led to a more prompt discovery of Ramirez's conduct. Bancomercio chose to

dismiss the person who stole the money, namely Ramirez, and her supervisor, namely Cardona, but not a third person who lacked direct involvement in the branch's operations, namely Lebron. No prudent person could conclude that Cardona's and Lebron's roles were sufficiently equivalent that failure to dismiss Lebron bore on whether firing Cardona was based on pretext and actually resulted from age animus.

■■■■■ To withstand a motion for judgment as a matter of law, Cardona must "elucidate specific facts which would enable a jury to find the reason given [by Bancomercio] was not only a sham, but a sham intended to cover up the [bank's] real motive: age discrimination." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 9 (1st Cir.1990) (citations omitted). She has failed to present any such facts, and judgment as a matter of law should have been entered for Bancomercio on her ADEA claim.

B. *Law 100.* Law 100 is the Puerto Rico equivalent of the federal ADEA, providing for civil liability in age discrimination actions. Similar in several respects, the two statutes diverge on how discrimination is to be proved.

■■■■■ The most important difference involves the shifting of the burden of proof. Although the plaintiff in an ADEA case always bears the burden of proof, Law 100 temporarily places that burden on the employer, and thus is significantly more favorable to plaintiffs than is the ADEA. *See Ibanez Benitez v. Molinos de Puerto Rico, Inc.*, 114 P.R. Dec. 42, 52, 1983 WL 204221 (1983). Under Law 100, the plaintiff has two requirements to establish a prima facie case: 1) she must demonstrate that she was actually or constructively discharged; and 2) she must allege that the decision was discriminatory. *See Alvarez–Fonseca*, 152 F.3d at 28. Once this minimal showing has been estab-

---

4. For similar reasons, Cardona was not similarly situated with the assistant vice president

of operations or with the vice president of operations.

lished, the burden shifts to the employer to prove by a preponderance of the evidence that it had "just cause" for its actions. *Id.* If the employer establishes "just cause," the burden of proof returns to the plaintiff to show that the employer's decision was motivated by age discrimination, thereby placing the plaintiff "in the same situation as an ADEA plaintiff after the defendant has articulated a legitimate non-discriminatory reason[.]" *Id.* If, however, the employer fails to prove "just cause," the employer bears the burden of proving that the decision was not motivated by age discrimination. *Id.*

■ There can be no doubt that Cardona both proved she was discharged and alleged that Bancomercio's decision was discriminatory. The burden then shifted to Bancomercio, but the bank failed to present any developed argument about whether just cause existed.[5] However, even if we assume that the bank has not shown just cause, Bancomercio met its burden of proving by a preponderance of the evidence that the decision was not motivated by age discrimination. Simply put, the closest approximation to evidence of age discrimination was the basic fact that Cardona was over 40 when fired and was replaced by someone slightly under 40. This fact is inconsequential in light·of the compelling weight of the bank's legitimate reason: her failure to take the precautions necessary to protect the depositors' funds. As has been said several times, the uncontroverted evidence showed that she had been instructed to monitor her tellers and to take certain security measures but failed to do so. While it may have been a severe punishment, it is clear that Cardona was dismissed for her dereliction and not for her age. No reasonable jury could have found otherwise.

5.  On appeal Bancomercio concedes that Cardona's failure to supervise "may not constitute just cause ... because there [was] only one incident [and, in general, Puerto Rico law] requires a pattern of violations [for just

### III.  *Conclusion*

We conclude that no reasonable jury could have found for Cardona under either the ADEA or Law 100. Bancomercio proved by a preponderance of the evidence that the decision to fire her was based on her own failings and was not motivated by age discrimination. She was unable to present any sufficient reason to disbelieve Bancomercio's proffered explanation. Since she has not presented enough evidence to prevail on the ADEA or Law 100 claims, Cardona's subsidiary, related claims must also fail.

*For the foregoing reasons, the judgment is reversed.*

cause] except in the event of a grave error." Although it argued the point to the jury, Bancomercio does not pursue on appeal whether Cardona's actions constituted such a "grave error."