Ramiro Montoya **ZETINA**, et seq., Plaintiffs,

v.

**BANCO BILBAO VIZCAYA**, et al., Defendants.

No. Civ. 95–2355 (RLA).

United States District Court, D. Puerto Rico.

Dec. 20, 1999.

---

Jane A. Becker–Whitaker, San Juan, PR, for plaintiffs.

Carlos Martinez–Texidor, Martinez–Texidor & Fuster, Ponce, PR, Pedro J. Manzano–Yates, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ACOSTA, District Judge.

Codefendant BANCO BILBAO VIZCAYA ("BBV") has moved for dismissal of the discrimination claims asserted by RAMIRO MONTOYA ZETINA ("MONTOYA") based on his age, race and national origin. The court having reviewed plaintiff's response as well as the documents in file hereby finds that a controversy over material facts preclude the entry of judgment at this stage of the proceedings.

### THE FACTS

The following facts are not disputed.

1. Plaintiff MONTOYA was born on **January 9, 1947,** in Belize City, Belize.

2. In **1964** MONTOYA was hired by the ROYAL BANK OF CANADA and eventually transferred to Puerto Rico in **1983.**

3. In **1985** MONTOYA was appointed manager of ROYAL BANK OF CANADA's Old San Juan Branch.

4. The ROYAL BANK OF CANADA's Puerto Rico operations were subsequently controlled by the ROYAL BANK OF PUERTO RICO.

5. In **1993** ROYAL BANK OF PUERTO RICO merged with BBV and BBV became the surviving entity.

6. During the first quarter of **1994,** BBV created the "Empresas Group" within the Corporate Division to promote new business and increase its business portfolio.

7. In **April 1994** MONTOYA was transferred to the "Empresas Group".

8. In his new position MONTOYA was required to procure $12 million per year on new loans.

9. MONTOYA was terminated from his employment with BBV on **January 24, 1995.**

10. MONTOYA filed a Charge of Discrimination with the Equal Employment Opportunity Commission and the Antidiscrimination Unit of the Puerto Rico Department of Labor on **July 18, 1995.**

11. Plaintiff and his wife filed the instant complaint on **November 7, 1995.**

### MOTION FOR SUMMARY JUDGMENT

This action is based on MONTOYA's claims of discrimination based on his age under the Age Discrimination in Employment Act "ADEA", 29 U.S.C. §§ 621 *et seq.;* national origin and color pursuant to Title VII of the Civil Rights Act as amended, 42 U.S.C. §§ 2000e *et seq.* and Law No. 100 of June 30, 1959 as amended, P.R.Laws Ann. tit. 29, §§ 146 *et seq.* (1995). Additionally, plaintiff seeks relief for alleged unjust dismissal under local statute, Act 80 of May 30, 1976, P.R.Laws Ann. tit. 29, § 185a (1995). BBV seeks dismissal arguing that the claim for discriminatory transfer to the Empresas Group is time-barred. Defendant further contends that its reasons for not accepting MONTOYA's subsequent requests for transfer out of the Empresas Group were legitimate and non-discriminatory and any such claim must also be dismissed. Additionally, defendant contends that the claims for termination from employment should likewise be dismissed because plaintiff failed to meet his burden under the *McDonnell Douglas v. Green,* 411 U.S.

792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) paradigm and was terminated for legitimate, non-discriminatory reasons.

## TRANSFER IN AND OUT OF EMPRESAS GROUP

The Second Amended Complaint filed on June 7, 1996 (docket No. 22) challenges plaintiff's termination from employment with BBV and alleges harassment while working at the Empresas Group. However, no claim premised on plaintiff's transfer to the EMPRESAS GROUP is asserted in the pleading. In his response to the dispositive motion, MONTOYA confirmed that he is not pressing a cause of action for his relocation from the San Juan Branch. According to plaintiff, references to the circumstances surrounding his reassignment were included merely as additional evidence of discriminatory intent behind his predetermined dismissal.[1]

It appearing that no cause of action has been asserted challenging plaintiff's reassignment, defendant's request for dismissal of the claim for discriminatory transfer to the Empresas Group as time-barred is **DENIED.**

Likewise, defendant's request for dismissal of the claims allegedly based on the failure to relocate plaintiff out of the Empresas Group is **DENIED.** Plaintiff did not plead a separate cause of action based on defendant's failure to grant his requests for reassignment. Rather, these rejections are intended as circumstantial evidence indicating discrimination.

## PRIMA FACIE CASE OF DISCRIMINATORY TERMINATION

■ Plaintiff contends that his termination from employment was motivated by age in contravention to the Age Discrimination in Employment Act ("ADEA") as well as by his national origin and race which are proscribed by Title VII of the Civil Rights Act.

■ In its petition seeking dismissal defendant argues plaintiff has not met his burden under the burden-shifting framework established in *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for Title VII claims[2] which has been extended to ADEA cases. *Cardona Jimenez v. Bancomercio de P.R.,* 174 F.3d 36, 40–41 (1st Cir.1999). Pursuant to this scheme, once plaintiff meets his initial burden[3] a presumption of unlawful discrimination arises and the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. At this point the burden falls again on plaintiff to prove not only that the proffered reason was false but that the adverse action was engendered by improper discriminatory motive. *Rodriguez–Cuervos v. Wal–Mart Stores, Inc.,* 181 F.3d 15, 19 (1st Cir.1999).

However, the *McDonnell Douglas* paradigm is limited to cases where no direct evidence of discrimination is available to the plaintiff, which is not the situation presently before us. *See Rodriguez–Cuervos,* 181 F.3d at 19 ("[a]bsent direct evidence of discrimination, a Title VII plaintiff must resort to the three-stage burden-shifting framework"); *Conward v. Cambridge Sch. Comm.,* 171 F.3d 12, 19 (1st Cir.1999) ("the burden-shifting framework [is] applicable to disparate treatment cases in which no direct evidence of discrimination exists"); *Cardona Jimenez,* 174 F.3d

---

1. Plaintiffs' Memorandum of Law in Support of Opposition to Motion for Summary Judgment (docket No. 56) at 9.

2. Specifically, defendant contends that MONTOYA was not meeting legitimate job expectations and that he was not replaced. Further, defendant argues that it had legitimate non-discriminatory reasons for the termination.

3. Plaintiff must initially present a prima facie case of discrimination by presenting evidence that he is (1) member of a protected class; (2) his employer took an adverse employment action against him; (3) he was qualified for the position; and (4) he was replaced by a person with similar qualifications.

at 40 ("when ... direct evidence is lacking, the plaintiff's ADEA claim is governed by the familiar *McDonnell Douglas* burden-shifting framework.")

In instances where defendant's discriminatory motives have been unequivocally conveyed, plaintiff may rely on this direct evidence to meet his/her burden without the need to resort to a presumption. *Cardona Jimenez*, 174 F.3d at 40; *Smith v. F.W. Morse & Co., Inc.*, 76 F.3d 413, 421 (1st Cir.1996) *See also* Trisin K. Green, *Making Sense of the McDonnell Douglas Framework: Circumstantial Evidence and Proof of Disparate Treatment Under Title VII*, 87 Calif.L.Rev. 983 (1999); Kaigh Smith, Jr., *How Do We Work This? Making Sense of the Liability Standard in "Disparate Treatment" Employment Discrimination Cases*, 14 Me.B.J. 34 (1999); Joseph J. Ward, *A Call for Price Waterhouse II: The Legacy of Justice O'Connor's Direct Evidence Requirement for Mixed–Motive Employment Discrimination Claims*, 61 Alb.L.Rev. (1997); Kelley E. Dowd, *The Correct Application of the Evidentiary Standard in Title VII Mixed-motive Cases: Stacks v. Southwestern Bell Yellow Pages, Inc.*, 28 Creighton L.Rev. 1095 (1995). *See also* Lori A. Tetreault, Annotation, *What Constitutes Direct Evidence of Age Discrimination in Action under Age Discrimination in Employment Act (29 US.C.A. §§ 621 et. seq.)—Post–Price Waterhouse Cases*, 155 A.L.R.Fed. 283 (1999).

■ Once faced with this direct evidence of discrimination, in order to avoid liability the defendant needs to establish that it would have taken the same decision even absent the alleged discriminatory factors.[4] *Smith*, 76 F.3d at 421.

In opposition to the summary judgment petition plaintiff submitted the sworn statement of OLGA ANDREU MEGWINOFF,[5] a BBV official from 1992 through 1997, attesting to BBV's explicit designs to get rid of MONTOYA because of his age, and race/national origin. MS. ANDREU declared under oath that on **March 24, 1994** she was informed by PATRICK HAGGARTY, her superior, that MONTOYA's firing was "imminent" and that in his new position plaintiff would be required to meet "such impossible production goals that [plaintiff] was bound to fail and then [BBV] would have an excuse to fire him". According to MS. ANDREU, MR. HAGGARTY revealed that the interest in getting rid of MONTOYA was due to his age and race.

It is evident from the information provided by MS. ANDREU that the circumstances surrounding plaintiff's transfer from his position as Branch Manager in Old San Juan are relevant to establish his discriminatory termination claim regardless of the fact that the transfer as such is not pleaded as a separate cause of action. Further, the direct evidence of discriminatory motive submitted by plaintiff coupled with all other instances of alleged harassment and disparate treatment while assigned to the "Empresas Group"[6] are sufficient to avoid summary dismissal.

4. The burden of proof in "direct evidence" cases was originally determined by *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The subsequent enactment of the Civil Rights Act of 1991 allows for limited recovery in cases where the employer acted with "mixed motives". *See Carey v. Mt. Desert Island Hosp.*, 156 F.3d 31, 42 (1st Cir.1998) (Stahl, J., dissenting); *Tanca v. Nordberg*, 98 F.3d 680, 681 (1st Cir.1996). *See also Jackson v. Harvard Univ.*, 900 F.2d 464 (1st Cir.1990) (pre–1991 Civil Rights Act enactment).

5. *See* Urgent Motion Supplementing Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ... (docket No. 85).

6. According to plaintiff, he had to give up his office; was the only one with shabby furniture; was left without a telephone; had to wait outside his supervisor's office for leave to enter; complimentary tickets were offered to clerical personnel in his presence and not to him; and was not allowed to vote in an Empresas Group's sub-committee. Additionally, one of his proposals was turned down while a similar one submitted by another Group member was approved and the rates

## CONCLUSION

Accordingly, the Motion for Summary Judgment filed by codefendant BBV (docket No. 55) [7] and Supplement to Defendant's Motion for Summary Judgment (docket No. 75) [8] are **DENIED.**

IT IS SO ORDERED.

and commissions given to other members were more beneficial.

7. *See* Plaintiffs' Opposition ... (docket No. **56**); Defendant's Reply ... (docket No. **57**); and Plaintiffs' Sur–Reply ... (docket No. **58**).

8. *See* Plaintiffs' Opposition ... (docket No. **77**)