# United States Court of Appeals
## For the First Circuit

No. 19-2249

LUZ GONZÁLEZ-BERMÚDEZ,

Plaintiff, Appellee,

v.

ABBOTT LABORATORIES P.R. INC.; KIM PÉREZ,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Virginia A. Seitz, with whom Kathleen Moriarty Mueller, Sidley Austin LLP, Ricardo F. Casellas Sánchez, Carla S. Loubriel, and Casellas Alcover & Burgos PSC were on brief, for appellants.
Juan Rafael González Muñoz, with whom Juan C. Nieves-González, González Muñoz Law Offices, P.S.C., Carlos M. Vergne-Vargas, and Law Office of Carlos Vergne were on brief, for appellee.

March 3, 2021

**KAYATTA**, **Circuit Judge**. After being demoted, threatened with termination, and denied several promotions in 2013 and 2014, Luz González-Bermúdez filed suit against her employer, Abbott Laboratories, and her direct supervisor, Kim Pérez (collectively, "Abbott"), alleging age discrimination and retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34; Puerto Rico Law 100, P.R. Laws Ann. tit. 29, §§ 146-51; and Puerto Rico Law 115, id. §§ 194-194b. After a six-day trial, the jury found for González, awarding back pay in the amount of $250,000 and an additional $4 million for emotional distress. The district court upheld the liability verdict and entered judgment against Abbott on all counts but reduced the damages to just over $500,000 (to be doubled under Law 100, see id. § 146(a)(1)). On appeal, Abbott argues that the evidence was insufficient to support the jury's verdict. For the following reasons, we find that Abbott is entitled to judgment as a matter of law on González's ADEA claims and her corresponding claims under Law 100 and Law 115. But because Abbott failed to preserve its challenge to the jury's separate finding that Abbott retaliated against González for reporting to the State Insurance Fund (SIF), in violation of Law 115, we decline to upset the jury's verdict in that respect.

**I.**

We begin by briefly summarizing the facts, viewing the record in the light most favorable to González and drawing all

reasonable inferences in her favor. See Muñoz v. Sociedad Española de Auxilio Mutuo y Beneficiencia de P.R., 671 F.3d 49, 55 (1st Cir. 2012). González began working at Abbott Laboratories in 1984. Over the next twenty-five years, she eventually became a National Sales Manager, which was designated as a Level 18 position on the Abbott Laboratories pay scale. In November 2010, Abbott underwent a reorganization and eliminated González's position, as well as the positions of two other employees, Rocio Oliver and Dennis Torres. All three employees accepted transfers to lower-level positions. As a result, González assumed the role of Institutional Marketing Manager, a newly created Level 17 position supervised by Kim Pérez. González does not challenge the lawfulness of this transfer.

González's transition to the new position was less than smooth. She disliked Pérez's style of supervision, and in November 2011 she filed an internal complaint against Pérez for harassment, which was ultimately found unsubstantiated. In addition to getting used to a new supervisor, González had to adjust to a new workload: While she had previously supervised twenty-eight employees in her role as a National Sales Manager, she was expected to complete her tasks independently in her new Institutional Marketing Manager position. At trial, González admitted that she was unable to timely perform all the duties of her new position, resulting in a "partially achieved" performance rating for 2011 -- her first ever

negative performance evaluation at Abbott. González's duties were subsequently redistributed at her request, and she received an overall positive "achieved expectations" rating for 2012. However, she still received a negative "partially achieved" rating for two categories of tasks relating to communication, organization, and meeting deadlines.

On March 18, 2013, Abbott reassigned González to a Level 15 Product Manager position supervised by Pérez. At trial, Pérez testified that the reassignment decision was made to reflect the duties González had been performing since some of her responsibilities from the Level 17 position were redistributed in 2012. González, by contrast, testified that she believed she was demoted in 2013 because of her age: She was fifty-three years old at the time, and the two other employees who had accepted lower-level positions as a result of the 2010 reorganization, Oliver (age forty-four) and Torres (age forty-one), were not similarly demoted.

Upon learning that she was being demoted on March 18, 2013, González experienced symptoms of anxiety and immediately reported to the company doctor. On the doctor's advice, she reported to the SIF and was placed on rest until July 10, 2013. But she returned to work just a few weeks later, cutting her medical leave short, after receiving a letter from Abbott

threatening to terminate her employment if she did not report to work by April 8, 2013.

According to González's 2013 mid-year performance evaluation, González continued to miss project deadlines after returning to work. Nevertheless, González testified that based on her mid-year review, she believed she was "on track" and achieving the expectations of her position. One month later, in mid-October 2013, González's attorneys informed Pérez that González intended to sue her for age discrimination, based on the March 2013 demotion decision. Later that month, González filed an administrative claim of age discrimination. According to González's testimony at trial, her professional relationship with Pérez worsened after she filed her complaint of age discrimination. For example, González testified that Pérez deprived her of information she needed to participate in a meeting held on October 30, 2013.

In November 2013, González became aware that a Level 16 Senior Product Manager position had opened up. She emailed Matt Harris, Abbott's general manager in Puerto Rico, expressing her interest in the position and her belief that she had not been informed of the opening out of retaliation for her complaint of age discrimination. Unbeknownst to González, Abbott had begun recruiting externally for the position via LinkedIn in August 2013. After receiving González's email, Harris had the position posted internally so that Abbott employees could compete with external

- 5 -

candidates. González subsequently submitted her name for consideration. Meanwhile, the hiring committee designed the process by which they would select a candidate to fill the position. In doing so, the members of the hiring committee -- Harris, Pérez, and two members of Abbott's human resources department -- discussed González's discrimination complaint among themselves and with counsel. After conducting an initial review of the candidate slate, the hiring committee selected three finalists -- González and two external candidates.

In December 2013, the hiring committee interviewed González and the other two finalists for the Senior Product Manager position. After the interviews, the hiring committee informed all three finalists that they would each be required to give a mock sales presentation the following day. González had never heard of such a requirement in an Abbott interview process. And she thought it was unnecessary for her to fulfill such a requirement because she had given similar presentations in the course of her employment at Abbott to various individuals, including members of the hiring committee. Concluding that the presentation requirement was imposed specifically to prevent her promotion, González refused to participate. Despite her withdrawal from the presentation component of the selection process, González emailed one of the members of the hiring committee two days later to reiterate her interest in the position, at which point she was informed that one

of the other finalists -- who had fulfilled the presentation requirement -- had already been hired.

In January 2014, González sought to be promoted to a Level 18 Regional Sales Manager position that had been posted internally. The following month, she received her end-of-year evaluation for 2013. Pérez had given her an overall negative, "partially achieved" performance rating, rendering her ineligible for promotion in 2014 according to Abbott's general policy or practice. Pérez testified at trial that she gave González a negative evaluation because González had repeatedly missed deadlines and lost her composure with colleagues when confronted about her untimely work. González did not specifically dispute the contents of the evaluation but disagreed with Pérez's overall assessment of her performance and requested that the human resources department conduct its own review. In connection with that request, she asked that her emails from 2013 be reinstated, but was informed that the emails had already been deleted and could not be retrieved. Hearing this, González filed an administrative complaint for retaliation.

While González's request for review of her performance evaluation and her administrative complaints were pending, Abbott determined that a different employee should be promoted to the Level 18 Regional Sales Manager position. Because promoting that employee would leave a Level 16 Senior District Manager position

open, Abbott began looking for yet another employee to promote. Harris directed the hiring committee to keep this news quiet, but González found out about the Senior District Manager opening anyway and emailed Harris in March 2013 asking to be considered. Harris flatly denied her request, stating that she had failed to meet minimum expectations in several areas for the last three years. Ultimately, Abbott preselected another employee for the Senior District Manager position without requiring her to compete with other candidates for the promotion.

In April 2014, the human resources department developed a "Talent Management Review" document, which listed developmental actions and future potential promotions for some Abbott employees. The document did not identify any developmental actions or potential promotions for González. Nor was González placed on an official "performance improvement plan" to help her raise her performance rating from a negative "partially achieved" in 2013 to a positive "achieved expectations" in 2014. González nevertheless received a positive performance evaluation for both 2014 and 2015, albeit from a new supervisor.

## II.

We review de novo the district court's denial of Abbott's motion for judgment as a matter of law. See Muñoz, 671 F.3d at 55. Reversal is appropriate only if, based on the evidence in the record, "reasonable persons could not have reached the conclusion

that the jury embraced." Id. (quoting Sanchez v. P.R. Oil Co., 37 F.3d 712, 716 (1st Cir. 1994)).

## A.

We begin with González's claim of age discrimination. This claim is based solely on her demotion in March 2013. The district court held that the jury could have found age discrimination under both the ADEA and Law 100 on a theory of disparate treatment, citing evidence that two employees younger than the fifty-three-year-old González -- Rocio Oliver (age forty-four) and Dennis Torres (age forty-one) -- were not demoted in 2013.

This was error. "[I]n order to be probative of discriminatory animus, a claim of disparate treatment 'must rest on proof that the proposed analogue is similarly situated in material respects.'" Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 451 (1st Cir. 2009) (quoting Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 752 (1st Cir. 1996)). Though the comparison cases "need not be perfect replicas," García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008) (quoting Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999)), they must be similar enough that "apples are compared to apples," Cardona Jiménez v. Bancomercio de P.R., 174 F.3d 36, 42 (1st Cir. 1999) (alteration omitted) (quoting Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989)).

- 9 -

No matter how generously one views the trial record, it is apparent that Oliver and Torres were not similarly situated to González in several important respects. Although Oliver and Torres, like González, saw their positions eliminated as a result of Abbott's reorganization three years earlier in 2010, this at most shows that they were similarly situated to González in one respect in 2010. For the next three years, Oliver and Torres occupied lower positions, performed different duties, and reported to different supervisors than did González. See García, 535 F.3d at 32-33 (finding two employees not similarly situated where they held different positions and had different responsibilities); Rodríguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 20-21 (1st Cir. 1999) (finding two employees not similarly situated where the employees had different supervisors and worked under different circumstances). Moreover, there is no evidence in the record regarding Oliver and Torres's job performance between 2010 and 2013, which would be necessary for González to establish that Abbott discriminated against her by demoting her without also demoting Oliver and Torres. See Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 26 (1st Cir. 1998) (rejecting a disparate treatment claim where two employees had different performance records). In sum, if Oliver and Torres were apples in 2013, González was not even a fruit.

Without this unsuitable comparator evidence, González is left with no evidence that in any way suggests that she was demoted in March 2013 because of age discrimination. At oral argument, counsel could cite none. In her brief, González tries to rely on the fact that months later, after she asserted her claim that the March 2013 demotion was discriminatory, Pérez mentioned the claim while discussing the selection process for the Senior Product Manager position. But an employer's awareness that a discrimination claim has been made hardly provides evidence that the claim is valid. Otherwise, there would necessarily be evidence of discrimination in every case of claimed discrimination.[1]

The district court speculated that perhaps Pérez had designed the Level 17 job to which González was transferred in the 2010 reorganization to be so difficult that González would fail in it. But there is no evidence to support this rather remarkable speculation, and even González did not challenge her transfer to the new position in 2010. See Brandt v. Fitzpatrick, 957 F.3d 67, 75 (1st Cir. 2020) (explaining that a plaintiff cannot avoid judgment as a matter of law in an employment discrimination case based on "rank conjecture," "improbable inferences," and "unsupported speculation" (first quoting Pina v. Children's Place,

---

[1] By contrast, awareness of a claim is certainly relevant (indeed necessary) to establishing a retaliatory motive for a subsequent adverse employment action. Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013).

- 11 -

740 F.3d 785, 795 (1st Cir. 2014); then quoting <u>Ray</u> v. <u>Ropes &</u> <u>Gray LLP</u>, 799 F.3d 99, 116-17 (1st Cir. 2015))).

Nor is there evidence showing that Abbott told any material lies that might in context have been viewed as attempts to conceal a discriminatory motive. The district court found that the jury could have reasonably believed Abbott "had something to hide," citing only the rather trivial disagreement among Abbott witnesses about whether González's 2013 demotion should be characterized as a "demotion" or a "transfer." This evidence does not support an inference of discrimination. See <u>Zapata-Matos</u> v. <u>Reckitt & Colman, Inc.</u>, 277 F.3d 40, 45 (1st Cir. 2002) (explaining that courts must weigh the evidence "case by case," asking "not whether the explanation was false, but whether discrimination was the cause" of the adverse employment action).

There is evidence that González and Pérez had a difficult professional relationship from the get-go, leading González to file an unsubstantiated harassment claim against Pérez back in 2011. The district court, too, found Pérez to be "haughty" while on the stand at trial. But that stands far removed from proving discrimination. If anything, it suggests that the two simply did not get along.

González falls back on a claim of waiver, asserting that Abbott failed to preserve its challenge to the sufficiency of the evidence on the age discrimination claim concerning the March 2013

demotion.  Abbott moved for judgment as a matter of law pursuant to Rule 50(a) at the close of the evidence, arguing that there was "no direct evidence of discrimination" and not "a scintilla of evidence" that the elimination of González's position was "associated" with any "lies."  But in staking out that position, Abbott did not specifically mention and refute the comparator evidence that González relied on in attempting to prove age discrimination.  Therefore, reasons González, Abbott waived the right to make any arguments concerning that evidence.

We disagree.  A party certainly must move for judgment as a matter of law under Rule 50(a) at the close of the evidence in order to preserve fully the ability to press a renewed motion for judgment as a matter of law under Rule 50(b) after the verdict.  See Osorio v. One World Techs., Inc., 659 F.3d 81, 87 (1st Cir. 2011).  Here, Abbott indisputably filed a timely motion under Rule 50(a) at the close of the evidence and specifically asserted that there was no evidence to support the age discrimination claim.  Our caselaw does not as a general matter require more specificity.  See id. at 88 ("[Rule 50(a)] does not require technical precision in stating the grounds of the motion." (alteration in original) (quoting Lynch v. City of Boston, 180 F.3d 1, 13 n.9 (1st Cir. 1999))).  Otherwise, Rule 50(a) motions -- often made while the jury awaits argument and instructions -- would necessarily turn into lengthy analyses of every possible piece of evidence in the

other party's possible favor. In this very case, the district court told counsel to "make it very short because I know what the evidence is. So just make it short." When Abbott later filed its Rule 50(b) motion, which specifically pointed out the insufficiency of González's comparator evidence, the district court expressed no surprise and found no waiver. Finally, the record suggests that no more precision was necessary to avoid prejudice to González. There is, in short, no reason to find that Abbott lost the opportunity to explain on appeal why it was correct in timely asserting that there was no evidence of age discrimination in the March 2013 demotion.

Finding no waiver and no evidence that González was demoted in March 2013 because of her age, we conclude that the evidence at trial was not sufficient to support a verdict against Abbott for age discrimination under the ADEA. And while González correctly points out that Law 100 shifts the burden of proof to the employer on the issue of discrimination if the challenged employment action is unjust, see Alvarez-Fonseca, 152 F.3d at 27, she has not put forth any evidence of unjustness in her demotion. Even if she had, Abbott established a total absence of evidence that its actions were motivated by González's age.[2] See Baralt v.

---

[2] Because the jury could not reasonably have found that Abbott demoted González because of her age, we need not decide whether Kim Pérez (González's supervisor) could have been held personally liable for age discrimination under Law 100.

Nationwide Mut. Ins. Co., 251 F.3d 10, 17-21 (1st Cir. 2001) (rejecting the plaintiffs' Law 100 claim because the record was "bereft of indicia of discriminatory intent").

**B.**

We turn next to González's retaliation claims under the ADEA and Law 115. Both statutes prohibit an employer from taking adverse employment action against an employee because of her protected activity. See Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94, 97 (1st Cir. 2018). The district court held that the evidence at trial was sufficient for the jury to find Abbott liable for retaliating against González on three separate occasions. We address each in turn.

**1.**

At trial, González argued that Abbott retaliated against her in violation of Law 115 by threatening her with termination after she reported to the SIF. Recall that after González was informed of her demotion in March 2013, she reported to the SIF and went on medical leave. Approximately one to two weeks later, she received a letter from Abbott stating that if she did not cut her medical leave short and return to work, Abbott would terminate her employment. Presumably based on that threat of termination, the jury found that Abbott retaliated against González for reporting to the SIF, which is undisputedly protected activity for purposes of Law 115. The district court upheld this aspect of the

- 15 -

jury's verdict, finding that Abbott had waived any objection in its Rule 50(a) motion.

On appeal, Abbott suggests that the SIF claim could not support a finding of retaliation under Law 115 because a threat of termination is not an adverse employment action. But it provides no support for this proposition, and it does not attempt to explain why the contrary authorities cited by the district court are inapplicable. And insofar as Abbott argues that its letter threatening to terminate González's employment was authorized by Puerto Rico law and thus could not constitute unlawful retaliation under Law 115, it does not adequately develop that argument on appeal. Nor does it develop any argument as to why the district court's Rule 50(a) waiver ruling was wrong. Rather, it simply states that it "strongly disagree[s]" with the district court's logic. We therefore deem Abbott's contentions regarding González's SIF claim waived for lack of sufficient argumentation, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), and affirm the district court's decision to the extent that it upholds the jury's verdict on that claim under Law 115.

**2.**

González's second theory of retaliation arises out of Abbott's refusal to promote her to the Senior Product Manager position in December 2013, following her complaint of age discrimination against Pérez in October 2013. The district court held that the jury could have believed that the selection process for this position was intentionally stacked against González and that her non-promotion was therefore retaliatory.

In a retaliatory failure-to-promote case, a plaintiff must ordinarily show, among other things, that "she applied for a particular position . . . for which she was qualified." Velez v. Janssen Ortho, LLC, 467 F.3d 802, 807 (1st Cir. 2006). No reasonable jury could find that González has met this threshold burden. The undisputed evidence in the record shows that González refused to participate in the mock-presentation component of the application process. As such, she voluntarily forfeited her eligibility for promotion to the Senior Product Manager position. Cf. Zabala-De Jesus v. Sanofi-Aventis P.R., Inc., 959 F.3d 423, 430-31 (1st Cir. 2020) (holding that an employer did not discriminate against the plaintiff by failing to hire him for a position for which he did not apply); Love v. Alamance Cnty. Bd. of Educ., 757 F.2d 1504, 1510 (4th Cir. 1985) (rejecting a claim of discriminatory non-promotion where the employee withdrew her application).

Of course, if an employer makes it clear that completing the application process is futile on account of a potential applicant's recent complaint of age discrimination, then the law may require only that the plaintiff show that she would have otherwise applied for and obtained the job. Cf. Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365 (1977) ("If an employer should announce his policy of discrimination by a sign reading 'Whites Only' . . . , his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs."). We might also imagine an extreme case in which an employer unlawfully made it impossible or dangerous for a person to complete the application process.

This is not such a case. González only argues that the sales presentation was not a usual part of Abbott's hiring process. That is beside the point. It was plainly job-related, and it was required equally of all the finalists who were selected to interview for the position. Perhaps she would have done well. Perhaps not. We do not know only because she did not try. As a general rule, it is not for the plaintiff to predict the employer's hiring decision and then claim to be the victim of that predicted decision. See Brown v. Coach Stores, Inc., 163 F.3d 706, 711 (2d Cir. 1998) ("It would be unthinkable to routinely permit non-applicant plaintiffs in individual suits to recover . . . based on what amounts to mere speculation that they would have been rejected

for discriminatory reasons had they applied." (quoting 1 Lex K. Larson, Employment Discrimination § 8.02[2], at 8-30-8-31 (2d ed. 1997))); see also Hoffman-García v. Metrohealth, Inc., 918 F.3d 227, 230 (1st Cir. 2019) (describing the plaintiff's failure to apply for the position at issue as a "fatal defect").

González also suggests that her failure to complete the application process for the Senior Product Manager position is not dispositive because Abbott had already retaliated against her by requiring her to apply in the first place, given that other Abbott employees were offered promotions without having to compete with external candidates.  However, the undisputed evidence in the record shows that Abbott began soliciting external candidates for the Senior Product Manager position in August 2013, well before González engaged in protected activity by filing her age discrimination complaint against Pérez in October 2013.  So Abbott's failure to offer González the Senior Product Manager position outright could not have been a retaliatory response to her October 2013 complaint of age discrimination.[3]  See Morón-Barradas v. Dep't of Educ., 488 F.3d 472, 481 (1st Cir. 2007) ("It

---

[3] Having determined that González's failure to complete the application process for the Senior Product Manager position in December 2013 bars her corresponding retaliation claim, we need not consider her other arguments for why the jury could have found retaliation.

- 19 -

is impossible for [an employer] to have retaliated against [an employee] before she engaged in protected activity.").

## 3.

Finally, the district court held that the jury could have reasonably found Abbott liable for retaliating against González in violation of the ADEA and Law 115 by giving her a "partially achieved" performance evaluation for 2013 and then denying her two promotions in early 2014. On appeal, Abbott argues that the record lacked sufficient evidence for a reasonable jury to find that either the 2013 performance evaluation or the 2014 non-promotions were motivated by retaliatory animus rather than legitimate business judgments.

### a.

González's claim that her worse performance evaluation for 2013 was retaliatory rested primarily on chronology: She testified that she received a favorable rating from Pérez at her mid-year evaluation in September 2013, then filed her claim of age discrimination against Pérez in October 2013, and then received the less favorable end-of-year review from Pérez in February 2014. So, she reasons, the "drop" from mid-year to end-of-year must have been a retaliatory response to her October claim.

Chronology alone can sometimes support an inference of improper motive, but only where the circumstances make such an inference reasonable. See Colburn v. Parker Hannifin/Nichols

Portland Div., 429 F.3d 325, 337-38 (1st Cir. 2005). The immediate problem with González's reasoning is that she had also filed an internal complaint against Pérez in 2011, before the 2013 mid-year review. Yet, says González, that was a good and fair review. So we question the reasonableness of any inference that the lesser end-of-year review was necessarily the result of González's October 2013 claim against Pérez, and ask whether something else accounts for the lower review.

The record answers that question in the affirmative. It contains undisputed evidence that González's performance worsened after her mid-year evaluation had been completed. According to the mid-year evaluation, she missed only three deadlines in the first eight months of 2013 -- one on January 15, one on July 15, and one on August 1. The end-of-year evaluation indicates that González missed at least three more deadlines over just the next four months -- including one on September 30, one in mid-October, and one on November 5 -- and failed altogether to complete one of the late projects that had been discussed at her mid-year evaluation. These facts are not disputed by González, and they buttress the unreasonableness of any inference of retaliation arising from the chronology she relies on. See id. at 336-38 (finding that the timing of the plaintiff's termination raised no inference of retaliation because, during the period between his protected conduct and his termination, his employer determined

that he had lied about his reasons for being absent from work on two occasions); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991) (similar).

The district court nevertheless suggested that the jury reasonably could have disbelieved Abbott's missed-deadlines argument because Abbott had deemed González a finalist for promotion to the Senior Product Manager position in December 2013, just days before the end of the yearlong period on which her 2013 performance evaluation was based. In the district court's view, this evidence implied that González's performance was sufficiently competent in 2013 to qualify her for promotion and therefore suggested that her negative evaluation must have been motivated by retaliatory animus rather than her poor performance. But undisputed trial testimony indicates that González was included in the pool of finalists for that position based on her positive performance evaluation for 2012, which was her most recent performance evaluation at the time, rather than on her performance in 2013. In short, there was no inconsistency between González's partial success in seeking a promotion based on her 2012 performance and her subsequent receipt of a negative rating for her 2013 performance.[4]

---

[4] Moreover, that partial success of being selected as one of the three finalists out of more than one hundred applicants came after González filed her charge of age discrimination. This only

The district court also identified other actions that it viewed as incompatible with Abbott's contention that González's poorer evaluation was justified by her poorer performance. Specifically, the district court noted that Abbott had not placed González on a "performance improvement plan" or formally identified "developmental actions" for her to take in 2014. But it is undisputed that Abbott only instituted performance improvement plans for employees who had received two consecutive negative performance evaluations, not for employees like González who had received only one. And while several witnesses at trial offered different reasons for Abbott's failure to identify developmental actions for González, documentary evidence admitted at trial indisputably indicates that Abbott did not list developmental actions for every employee, or even for every employee whose performance needed improvement.

Finally, the district court suggested that the jury nevertheless could have found Abbott liable for retaliation based on her 2013 performance evaluation because the jury reasonably could have regarded González's poorer performance as the result of "sabotage[]" by Pérez, based on González's testimony that Pérez had excluded her from meetings and deprived her of information essential to the performance of her duties. But González's actual

reinforces our conclusion that Abbott did not retaliate against her.

- 23 -

testimony indicates only that she complained about being deprived of information with respect to a single meeting on October 30, 2013, regarding a single project, which does not explain the multiple missed deadlines listed in her end-of-year evaluation. And there is no evidence in the record that González was excluded from meetings -- only that she felt "sidelined" during the October 30 meeting just mentioned.

In sum, it is apparent from the record that González repeatedly missed deadlines throughout 2013, and that her job performance worsened after she received critical feedback regarding her late work. The evidence cited by the district court and González, viewed collectively, does not suggest otherwise. More generally, it matters not whether González or Abbott is correct in characterizing the quality of her performance. Rather, the question is whether Abbott falsely claimed that it regarded her performance as poorer and, if so, whether the jury could reasonably infer that the real reason for the poorer performance rating was retaliation. Brandt, 957 F.3d at 82. Given that González's performance indisputably worsened to some extent between the September review and the end-of-year review, no reasonable jury could infer that Abbott's less favorable characterization of that performance, by itself, implied a retaliatory motive. See Carreras v. Sajo, García & Partners, 596 F.3d 25, 37 (1st Cir. 2010) (rejecting an employee's retaliation

claim because "[t]he evidence was consistent on the essential point, i.e., that [his] work was untimely and therefore unsatisfactory").

## b.

We quickly dispose of González's remaining retaliation claim, which arises out of Abbott's refusal to promote her to either Regional Sales Manager or Senior District Manager in early 2014. It is undisputed that, during the relevant time period, Abbott ordinarily did not promote employees who had received a "partially achieved" rating for the preceding year. Witnesses at trial, including González herself, consistently testified that this was the reason González was not promoted in 2014. It is true that the trial record contains discrepancies regarding whether this general rule was a "policy" or a mere "practice" at Abbott; whether González was "considered" for the promotions she sought before she was ultimately rejected; and whether Abbott relied on alleged performance shortcomings from 2011 and 2012 as well as from 2013 when deciding not to promote her. But such debates about tangential characterizations are, as a matter of law, insufficient to prove retaliation. See Carreras, 596 F.3d at 37.

## III.

For the foregoing reasons, we affirm the judgment of the district court in part, reverse in part, and remand for a new trial on the sole issue of damages resulting from Abbott's April 2013

letter threatening to terminate González's employment after she reported to the SIF, which the jury found to be unlawful retaliation.[5]  We award no costs.

---

[5] Having concluded that González's other claims of discrimination and retaliation lack adequate support in the record, we deny as moot Abbott's alternative request for a new trial on those claims.  And, having concluded that a new trial as to damages is appropriate, we need not consider Abbott's alternative request for further remittitur.